# EXHIBIT 4

REDACTED

# AGREEMENT FOR PROVISION OF PHYSICIAN SERVICES

This Agreement is made and entered into effective this **1st day of September, 2018**, by and between **AURORA BEHAVIORAL HEALTHCARE - TEMPE, LLC**, an Arizona limited liability company ("Facility") and Krzysztof Mlak, M.D., P.C. ("Physician").

## RECITALS

WHEREAS, Facility has executed contracts with payor(s) ("Payor"), under which Facility has agreed to provide covered inpatient, outpatient, partial hospitalization, intensive outpatient and chemical dependency behavioral health services to the beneficiaries of such Payor; and

WHEREAS, Facility desires to engage the services of Physician to perform the physician services required under Facility's contracts with Payors; and

WHEREAS, Facility desires to engage the services of Physician to perform on-call services; and

WHEREAS, Physician agrees to be so engaged and to perform the duties and obligations set forth in this Agreement and under the Facility's Medical Staff Bylaws.

NOW THEREFORE, in consideration of the above Recitals and of the mutual covenants and promises set forth below, the parties agree as follows.

## AGREEMENT

**I. Responsibilities of Physician**

1. Services. Physician is or will be placed on the mental health provider panel for Payor. Physician will accept all patients as assigned and preauthorized by Payor and Facility for clinically appropriate psychiatric treatment. Physician will follow assigned patients for the duration of the patient's treatment at the Facility and provide all required physician services. Should inpatient hospitalization be required, Physician will follow the patient as medical manager and will conduct individual therapy and attend treatment planning without any additional cost to the Facility. All inpatient admissions must be preauthorized by case management services at the Facility. A brief psychiatric evaluation must be performed within twenty-four hours.

2. On-Call For Assigned Patients. Physician will be available, or "on-call," twenty-four hours per day or provide hospital approved, mutually agreed upon coverage, for any inpatient admissions assigned to Physician.

3. On-Call Coverage. Physician will be available, or "on-call", twenty-four hours per day when assigned by Facility on weekends or other agreed upon days and is expected to work up the new admissions and to cover current inpatient needs in absence of their attending physician.

4. Case Management. Physician will support and participate in the case management system initiated by Facility's Needs Assessment and Referral Center, Utilization Management Department or such similar process as required by Payor

5. Utilization Review. Physician will participate in Facility's utilization review and quality improvement programs and provide requested data.

6. Peer Review Physician will participate in peer review activities on a rotation basis as assigned by the Facility.

7. Coverage by Physician. When absent, Physician will arrange substitute coverage without additional cost to Facility. No physician may be substituted by Physician to provide services hereunder except with the prior written approval of Facility in its absolute discretion.

8. Documentation of Services. Physician will promptly complete all medical records documentation in accordance with Facility and Payor policies and procedures.

9. Qualifications. Physician must maintain in good standing Physician's D.E.A. registration, State licensure and specialty accreditation. Physician certifies to the Facility that Physician has fully disclosed all information requested in appointment and reappointment (if any) application to the Medical Staff of the Facility and that all information disclosed in these applications is true and correct as of the date of this Agreement. The applications fully disclose, among other facts, any suspension or revocation of a medical license, professional sanctions, disciplinary actions and malpractice lawsuits. Physician's appointment and reappointment (if any) applications are hereby incorporated into this Agreement by reference as if fully stated herein.

10. Medical Staff Membership. During the term of this Agreement and all extensions and renewals thereof, Physician shall maintain active membership on the Facility Medical Staff with full clinical privileges in Physician's area of practice. Within thirty (30) days of termination of this Agreement for any reason, Facility, at its option, may direct in writing that Physician permanently resign Physician's membership on Facility's Medical Staff and any clinical privileges attendant thereto. Physician agrees that such direction by Facility shall automatically be deemed a resignation. Physician expressly waives any right to a hearing under the current Medical Staff Bylaws relating to such resignation with the understanding that, unless required otherwise by the Health Care Quality Improvement Act of 1986, the resignation would be a contractual matter only and not considered or reported as an adverse professional review action. The terms of this section will take precedence over any inconsistent terms which may be found in the Facility's Medical Staff Bylaws at the time of termination.

11. No Sanctions. Physician has not been, and during the term of this Agreement will not be sanctioned by the Health and Human Services Office of the Inspector General as set forth on the Cumulative Sanctions Report, or excluded by the General Services Administration as set forth on the List of Excluded Providers.

12. Performance Standards. In performing services under this Agreement, Physician agrees to (i) use diligent efforts and professional skills and independent professional judgment; (ii) perform all professional and supervisory services in accordance with recognized standards of the profession, (iii) act in manner consistent with all principles of ethics of the American Medical Association., (iv) comply with the bylaws, rules, regulations and policies of Facility and Facility's Medical Staff to the extent applicable to Physician; and (v) comply with all applicable federal, state and local requirements as well as HIPPA and The Joint Commission standards.

13. Insurance. During the term of this Agreement and all renewals or extensions hereof. Physician shall obtain and maintain liability insurance in an amount not less than $1,000,000 per occurrence and $3,000,000 annual aggregate covering Physician's services rendered pursuant to this Agreement, except where Physician offers proof to Facility that applicable state law limits Physician's professional liability to lesser amounts. Physician will obtain such insurance from a reputable insurer authorized to provide liability coverage in this state and will provide proof thereof at the time of execution of this Agreement and at any other time requested by Facility If, at any time, the insurance procured hereunder is provided on a claims made basis and the insurance is not renewed at the end of the policy term or if such claims made insurance is terminated for any reason, Physician will procure optional extension period coverage ("tail coverage") to assure that insurance coverage in the required amounts is maintained for claims made at any time related to an occurrence during the term of this Agreement. Claims made insurance will not satisfy the requirements of this paragraph unless the policy allows the purchase of tail coverage in the event of nonrenewal or termination of the policy. Physician will immediately notify Facility in the event of any proposed cancellation, actual cancellation or change in coverage of Physician's liability insurance.

14. Malpractice Claims/Adverse Actions Physician shall notify Facility within forty eight (48) hours of any malpractice or other claim made against Physician in connection with any patient or patient care by any individual. and provide such information as to such claim as Facility may request. Physician also shall provide such other information as the Facility may request with regard to prior malpractice claims, if any, against Physician and agrees that the Facility may monitor medical care provided by Physician as Facility deems appropriate. In addition, Physician will promptly notify Facility of any action taken by any other entity to restrict or terminate Physician's medical staff privileges and of any action taken by any licensing board to restrict, suspend or terminate Physician's license to practice medicine. Physician shall provide such information as Facility may request with regard to any previous actions affecting Physician's medical staff privileges or license to practice medicine.

15. Compliance with Reimbursement Laws. Physician will comply with those provisions of the law that affect reimbursement to the Facility. Physician will not do anything that will adversely affect reimbursement to the Facility or the Facility's Medicare provider status.

16. Facility Employees. Physician will not interfere with the relationship between the Facility and its employees. Employees serving at the Facility will be hired and terminated by the Facility required to comply with all rules and regulations established by the Facility and to work for compensation rates established by the Facility. Physician will not alter the Facility policies with respect to personnel in any way

## II. Compensation

1. Payments to Physician. Facility agrees to compensate Physician for the services rendered under this Agreement for those services performed under this all-inclusive agreement. For services provided Facility shall pay Physician:

1.1 [redacted] and 00/100 dollars ($[redacted]) per visit for psychiatric evaluations, including all follow-up and discharge summaries for inpatients receiving treatment at Facility.

a. Payments for physician visits with outpatients shall be $[redacted] per visit in accordance with the following schedule:
   i. Partial Hospitalization Program: 1 physician visit per patient per week,
   ii. Intensive Outpatient Program: 1 physician visit per patient per month.

iii. Additional visits to outpatients shall be paid if physician visit is requested by Facility staff.

1.2 [redacted] and 00/100 dollars ($[redacted]) each hospital for On Call Coverage when covering both Aurora hospitals in Arizona; and [redacted] and 00/100 dollars ($[redacted]) per night for night call when covering one hospital.

1.3 [redacted] and 00/100 dollars ($[redacted]) per Seclusion and Restraint (S&R) event when such event necessitates a trip to the Facility to attend the S&R event.

2. Invoicing. Physician will submit daily patient/visit logs (with patient name/ID, date of visit and type of visit) to the Facility. Bi-weekly (every two (2) weeks) Physician will submit an invoice for the patients seen the previous two (2) weeks. Facility agrees pay Physician within ten (10) business days of receiving the invoice.

3. No Patient Billing/Assignment of Right to Bill. Physician will not bill or collect from any Payor or beneficiary for services provided under this Agreement. Physician hereby assigns to Facility Physician's right to bill and retain collections for any and all professional services performed by Physician at the Facility. Physician will supply Facility with appropriate billing codes for all professional services performed at the Facility. At all times, Facility and Physician shall remain jointly and severally liable for Medicare overpayments and Physician shall retain unrestricted access to claims submitted by Facility for the services provided by the Physician.

**III. Term and Termination**

1. Term. This Agreement shall continue from the date first written above for a period of one (1) year and shall automatically renew at the end of the first year and for each subsequent year unless terminated sooner as provided herein.

2. Termination. This Agreement may be terminated as provided below in this paragraph:

2.1 Without Cause. This Agreement may be terminated by either party upon thirty (30) days prior written notice to the other.

2.2 For Cause. Facility may terminate this Agreement immediately upon notice to Physician in the event that: (i) Physician dies or a majority of the members of the Board of Trustees of the Facility determines Physician is disabled to the extent that Physician is incapable of performing the services required by this Agreement; (ii) Physician fails to maintain insurance coverage as required by this Agreement; (iii) Physician's license to practice medicine in any state is placed on probation, suspended or terminated; (iv) Physician's right to use or prescribe any controlled substance is limited, suspended or terminated; (v) Physician's membership on the active medical staff of the Facility or certification by Physician's specialty board is suspended or terminated; (vi) Physician is indicted for commission of a felony; (vii) Physician fails to comply with the personnel and administrative policies and procedures, bylaws, order, rules and regulations of Facility and/or medical staff; (viii) Physician engages in any dishonest or unethical behavior which results in substantial damage to discredit upon the Facility; (ix) Physicino is sanction by the Health and Human Services Office of the Inspector General as set forth on the Cumulative Sanctions Report, or excluded by the General Services Administration as set forth on the List of Excluded Providers, or (x) Physician fails to provide the services required by this Agreement or to comply with any provision of this Agreement.

2.3 Jeopardy Event. If either party to this Agreement shall cause notice to be served upon the other that a Jeopardy Event has occurred, the parties agree to use their best efforts to meet forthwith and to attempt to negotiate an amendment to this Agreement to remove or negate the effect of the Jeopardy Event. If the parties are unable to negotiate such amendment within fifteen (15) days following written notice by either party of the Jeopardy Event, then either party may terminate this Agreement immediately upon written notice to the other, notwithstanding any severability provisions hereof to the contrary. For purposes of this subparagraph, a "Jeopardy Event" exists (i) when the performance by any party for any term, covenant, condition or provision of this Agreement does or may jeopardize (a) the licensure of either party, or (b) the licensure of another health care entity owned or operated by either party or any corporate affiliate of such party ("Related Party"); or (c) any party or Related Party's participation in, or reimbursement from, Medicare, Medicaid, or other reimbursement or payment programs, or (d) any party or Related Party's full accreditation by The Joint Commission or any successor; or (ii) when the continuance of this Agreement is or may be in violation of any statute or ordinance or when continuance is or may otherwise be deemed illegal or deemed unethical by any recognized body, agency or association in the medical or behavioral health care fields.

2.4 Business Interruption. If the operation of Facility is interrupted or discontinued for any reason for a period of ten (10) days or longer, then either party may terminate this Agreement upon written notice.

2.5 No Renegotiation After Termination. If the Agreement is terminated pursuant to this paragraph, the parties agree that, for a period of one (1) year following such termination, the parties will not enter into another agreement solely for the services provided hereunder except on the exact same terms and conditions, including compensation and benefits, as this Agreement.

## IV. Representations, Warranties, and Covenants

1. Representations and Warranties. Physician represents and warrants to Facility that, except as disclosed in writing to Facility, the following are true with respect to Physician:

1.1 Physician is licensed to practice medicine in the state of Arizona and has never been suspended, revoked, restricted, or deemed to be probationary.

1.2 Physician has never been reprimanded, sanctioned, or disciplined by any licensing or accrediting board or state or local medical society or specialty board;

1.3 Physician has not been suspended or excluded from the Medicare program at the time Psychiatric Services are provided to Facility patients;

1.4 Physician has never been denied membership or reappointment of membership on the medical staff of any hospital, and no clinical privileges of the Physician have ever been suspended, curtailed, or revoked; and

1.5 As of the date hereof, Physician has not been the subject of any report or disclosure submitted to the National Practitioner Data Bank.

2 Covenants. Physician covenants that best efforts will be used to ensure that such representations will remain true throughout the term of this Agreement and that Physician will immediately notify Facility upon Physician's actual knowledge that any such representation or warranty becomes untrue.

V. **Miscellaneous**

1. Independent Contractor Status. It is expressly acknowledged and understood by the parties that Physician is an "independent contractor", and that nothing in this Agreement is intended to, or shall be construed to, create an employee/employer relationship, a joint venture relationship, a partnership or a landlord/tenant relationship; provided always that the performance of services hereunder shall at all times be in accordance with the law and with the terms and conditions of this Agreement. Physician acknowledges that neither Physician nor any of Physician's employees or contractors shall be treated as employees of Facility for tax purposes or for purposes of Workers Compensation coverage, and that Facility is not responsible for any required withholding or for the payment of any benefits to Physician or Physician's employees or contractors. Further, in the event the Internal Revenue Service or any other governmental entity should deem Physician or any of Physician's employees or contractors to be employees of Facility and require Facility to make payments on behalf of Physician or such employees or contractors, then Physician shall indemnify Facility for and against any such payments, penalties or interest paid by Facility.

2. Indemnity. Each party shall be responsible for its own acts and omissions and shall not be responsible for the acts and omissions of the other. Therefore, each party agrees to indemnify and hold the other party and its officers, directors, agents and employees, as applicable harmless from and against any claim, action, liability and expense (including costs of judgments, settlements, court costs and reasonable attorneys' fees, regardless of the outcome of such claim or action) arising out of or related to any act or omission of the offending party or its officers, directors, agents or employees related to the performance of the services provided under this Agreement.

3. Nondiscrimination. The parties agree not to discriminate against any person on the basis of race, color, age, creed, religion, gender, sexual orientation, national origin, Vietnam or disabled veteran's status or physical handicap.

4. Case Records and Histories. All documents, case records, case histories and medical records concerning Facility patients shall become and remain the exclusive property of Facility.

5. Confidentiality of Facility Information. Physician understands and agrees that in connection with Physician's engagement by Facility, Physician may acquire competitively sensitive information which is neither known to nor ascertainable by persons not engaged by Facility and which may cause Facility to suffer competitively or economically if such information became known to persons outside of Facility. Such information may be in the form of trade secrets, or in the form of confidential information. Confidential information shall include, but not be limited to Facility's business and business development plans, patient or supplier lists. Consequently, except as provided in this paragraph or otherwise required by law, Physician agrees not to directly or indirectly use or disclose to any individual or entity any Facility trade secret(s) at any time, as long as that information continues to be a Facility trade secret. Physician further agrees to maintain the confidentiality of any confidential information Physician acquires during Physician's engagement for the entire term of such engagement by Facility, and for as long as such information remains confidential. If required by Physician's duties under this Agreement and with the consent of Facility, Physician may disclose information relating to the operations of the Facility to members of the medical staff, state licensing agencies and the Joint Commission on Accreditation of Healthcare Organizations. Physician will not disclose information relating to the operations of the Facility to third-party reimbursement agencies (whether public or private) unless this Agreement, applicable statutes or regulations, or the terms of applicable agreements for reimbursement require disclosure.

6 Confidentiality of Patient Information. Physician agrees to protect to the fullest extent required by law the confidentiality of any patient information generated or received by Physician in connection with the performance of services hereunder. Physician specifically acknowledges that in receiving, storing, processing or otherwise handling records of Facility patients, Physician may be bound by federal laws governing addictive disease patients, including 42 C.F.R. Part 2. Physician agrees, if necessary, to resist in judicial proceeding any efforts to obtain access to patient records except as permitted by law. Physician shall further comply with all HIPPA regulations with regard to the privacy of patient records. This paragraph and Physician's obligation to maintain the confidentiality of Facility patient information shall survive termination of this Agreement.

7. Federal Requirements for Maintenance of Documentation. For the purpose of implementing Section 1861(v)(1)(I) of the Social Security Act as amended, and written regulations thereunder, Physician shall comply with the following requirements governing the maintenance of documentation to verify the cost of services rendered under this Agreement:

7.1 Until the expiration of four (4) years after the furnishing of services under this Agreement, Physician shall make available to the United States Secretary of Health and Human Services, or the Comptroller General of the United States, or any of their duly authorized representatives, this Agreement and all books, documents, and records of account that are necessary to certify the nature and extent of the cost of services.

7.2 Unless otherwise required by law, if Physician is requested to disclose any books, documents or other records relevant to this Agreement for the purpose of audit or investigation, Physician shall notify Facility of the nature and scope of such requests and shall make available to Facility, upon request, copies of such documents and records which are the subject of any request.

7.3 Physician shall indemnify and hold Facility harmless in the event that any amount of reimbursement is denied or disallowed by the reimbursement programs because of Physician's or any of Physician's subcontractors' failure to comply with the obligations set forth in subparagraphs 7.1 and 7.2 above. Such indemnity shall include, but not be limited to, the amount of reimbursement denied or disallowed, plus any interest, penalties and costs.

7.4 This Paragraph 7 will not be deemed a waiver by any party of the attorney-client privilege or other applicable privileges.

8 Severability. The invalidity of any provision of this Agreement shall not affect the validity of any other provision.

9. Construction. The parties acknowledge that each party hereto has contributed to the drafting of this Agreement and that the rule of construction that an instrument shall be construed against the drafting party shall have no application to this Agreement.

10. Notices. All notices require under this Agreement are deemed effective on the date delivered personally or mailed by registered or certified mail, postage prepaid or one day after deposit with a recognized, reliable overnight delivery service, addressed as set forth below or to such other address as the parties may from time to time designate in writing to the corresponding party

To Physician:

Krzysztof Mlak, M.D
______________
____________, AZ 85______

To Facility:

Aurora Behavioral Healthcare-Tempe, LLC
6350 S. Maple Ave.
Tempe, AZ 85283
Attention: Chief Executive Officer

11. Assignment. This Agreement or any obligation thereunder shall not be subcontracted or assigned except to an affiliate or purchaser of Facility.

12. No Inducement to Refer. No consideration under or in connection with this Agreement or otherwise between the parties contemplated, requires or shall require either Physician's referral or any patient to Facility or the purchase or order of any items or services from the Facility or entity affiliated with Facility. The parties enter into this Agreement with the intent of conducting their relationship in full compliance with applicable federal, state and local law, including the Medicare/Medicaid Anti-fraud and Abuse Amendments. The parties intend to comply with the Safe Harbor relating to personal service arrangements, set forth in 42 U.S.C. §1320a-7b and as set forth in the "safe harbor" regulations at 42 C.F.R. §1001.952. Notwithstanding any then current provision of the Facility's Medical Staff bylaws or rules and regulations or any then current practice or procedure for "on-call" or other coverage at the Facility, each party retains the right in its sole discretion to refer patients to any person or entity deemed appropriate for their care.

13. Governing Law. This Agreement shall be governed by and construed under the laws of the State of Arizona.

14. Entire Agreement/Merger. This Agreement sets forth the entire agreement between the parties and supersedes all prior or contemporaneous agreements or understandings (whether oral or written), if any, between the parties with respect to the subject matter of this Agreement.

15. Waiver. Any waiver of a breach of this Agreement must be in writing and will not operate as a waiver of any subsequent breach. No delay in acting will be considered a waiver

16. Amendment. This Agreement may be amended only in writing signed by both parties. To the extent that the law allows for the amendment of this Agreement orally, the parties hereto specifically acknowledge such right and hereby waive it.

17. Captions. All heading and caption used in this Agreement are for ease of reference and will not alter or affect the meaning of any provision of this Agreement.

18. Counterparts. This Agreement may be executed in counterparts, each of which will be deemed original, but all of which together shall constitute on and the same agreement.

IN WITNESS WHEREOF, Facility and Physician have executed this Agreement as of the date first written above.

PHYSICIAN

Signature
Krzysztof Mlak, M.D., P.C.

47-4982532
Tax I.D. Number

FACILITY

Signature
Bruce Waldo
Chief Executive Officer