# EXHIBIT 10

# Jahanzeb Ali Khan MD
Board Certified Psychiatrist

Re: Brooke Scianna
DOB: 7/14/2001
In the Matter of *Scianna v. State of Arizona, et al.*

**Introduction:**

I am a licensed physician in the States of Arizona, California, Florida, Nevada, South Carolina and Washington and am Board Certified in Psychiatry. My CV is attached. I am qualified to render expert opinions in this matter based on my education, training, and experience. I am familiar with the care and treatment of patients with behavior concerns and clinical presentation like Brooke Scianna and am qualified to comment on the medications and treatment she received as well as the conditions she experienced. I am also qualified based on my education, training, and experience in providing direct care to patients such as Brooke Scianna in settings like those in this case.

I am familiar with A.R.S. §12-2604. In the year immediately preceding the occurrence relevant to this litigation, the majority of my professional time was spent in the active clinical practice of psychiatry.

Based on my review of the medical records and other relevant documents, it is my expert opinion that at all times Dr. Mlak exercised that degree of care, skill and learning expected of a reasonable and prudent psychiatrist and did not cause or contribute to any injuries of Brooke Scianna.

The opinions presented here are offered within a reasonable degree of medical certainty. The opinions in this report are based on the information available at the time of the evaluation, and are subject to modification in the event that new information is received.

**Sources of Information:**

Disclosure Statements:

1. Plaintiff's 1st Amended Complaint
2. Plaintiff's 4th Supplemental Disclosure Statement (along with Affidavit of Dr. Clark)
3. Defendant Aurora's Amended 2nd Supplemental Disclosure Statement
4. Defendant Mlak's Initial Disclosure Statement
5. Defendant State of Arizona 4th Supplemental Disclosure Statement
6. Defendant State of Arizona 5th Supplemental Disclosure Statement
7. Plaintiffs' Response to Mlak RFP
8. Plaintiffs' Responses to Mlak's NUIs
9. Plaintiff's 18th Supplemental Rule 26(A)(1) Disclosure with Dr. Clark's Evaluation

1

10. Protective Order
11. Exhibit A to Protective order

Video & Audio Recordings:

12. 2018-07-02 CD
13. 2018-07-12 CD
14. 2018-11-15 CD
15. DUR (011) JD36034, 11-15-2018
16. Plaintiff Photographs & Videos

Medical Records/Miscellaneous Records:

17. 001a Aurora Behavioral Healthcare (08/25/18 DOS)
18. 001b. Aurora Behavioral Healthcare (01/19/18 DOS)
19. 001c. Aurora Behavioral Healthcare (04/30/18 DOS)
20. 09/17/20 Notice of Claim (DCS000001-43)
21. Scianna, Christine DCS Case File (DCS000044-2554)
22. ADOA Progress Notes (DCS002555-2658)
23. ADOA Scianna B 2008-2011 Overflow (DCS002659-2845)
24. ADOA Scianna, B 2011 Overflow (DCS002846-2896)
25. ADOA Scianna, Brooke (DCS002897-3076)
26. Care and Dignity GH_5598666 DCS Case File G201820959-1 Part 2 (DCS0030077-3245)
27. 2021-10-04 DDD Individual Support Plan Document (aka ISP) (1) (DCS003246-3285)
28. 2021-10-07 DDD Person-Centered Service Plan (DCS003286-3333)
29. Glendale PD Report I18120639 (AZDCS003334-3343)
30. Glendale 911 Report for Incident I18119487 (AZDCS003344)
31. Glendale PD Response to PRR for Incident I18119487 (AZDCS003346-3348)
32. ACCEL
33. Valleywise Health (08/03/18 – 08/08/18)
34. ACES – Dysart USD (2017 – 2019)
35. Dysart USD
36. Emails Folder of Plaintiff
37. Glendale Police Department (08/22/18)
38. Abrazo Arrowhead Campus (AAC) (07/23/18)
39. Abrazo Arrowhead Campus (AAC) (08/22/18 – 08/25/18)
40. Arizona Children's Association (ACA) (2011-2018)
41. Arcadia Therapy Services
42. Banner Del Webb Medical Center (ALL DOS) (BDEWMC)
43. Banner Thunderbird Medical Center (ALL DOS) (BTMC)
44. Care & Dignity Services
45. Child & Family Support Services (CFSS) (2016 – 2022)
46. CPRI Crisis Prep & Recovery
47. NOWT Not Only Words Therapy

48. Phoenix Children's Hospital (PCH) (ALL DOS)
49. St. Luke's Behavioral Health (SLBH) (2016)
50. SLBH (03/18/16 – 03/29/16)
51. SLBH (2017 – 2018)

Deposition Transcripts:

52. Christine Marie Scianna
53. Daniel Jason Quigley
54. John Scianna
55. Krzysztof Mlak, M.D.
56. Tina Canale
57. Stephanie Johnson

**Brooke Scianna Background**

Brooke was hospitalized numerous times to different facilities for aggressive behaviors that could not be managed at home and that would cause herself and family members to come to harm. During these hospitalizations she was treated with a number of antipsychotics. There are mentions of Brooke experiencing well-known side effects of medications at certain times. This resulted in stopping the medications at times which otherwise seemed to have been helping reduce aggression and self-harm behaviors.

A review of the depositions and testimony of family members shows that Brooke would attack people in the home and punch walls, leading to harm to herself on multiple occasions. Some of these instances resulted in her admission to the aforementioned hospitals and treatment centers.

It is pertinent to mention that Brooke's mother did not have Brooke on any consistent medication treatment plan despite her history of aggressive and violent behaviors against herself and others. Per Dr. Clark's report "Brooke was hospitalized at Banner in December 2017 after an incident of aggression at her father's house, and was again placed on antipsychotic medication. Ms. Scianna noted that she was opposed to the use of antipsychotic medications in general by this point in time, and that there were times when the father gave informed consent for such medication". Dr. Clark notes that Ms. Scianna was opposed to the use of antipsychotic mediations in general.

It is evident from the records that Ms. Scianna was opposed to the use of any antipsychotic medications despite Brooke's behaviors. It should be noted that Brooke Scianna continued to have aggressive and violent behaviors even after her discharge from Aurora in November 2018 back to her mother's house. Dr. Clark briefly notes in his report "that Brooke was seen at Banner Health on 3/26/2019 for a fracture of her humerus that occurred after an altercation with staff at school. She was given ketamine by EMS due to aggressive behavior." Dr. Clark does not describe any medications that Brooke was taking at the time of this incident or provide any additional opinions on this incident. A review of records from Brooke's school indicates: "Since her enrollment of 66 days at The ACES, Brooke has exhibited 137 incidences of physically aggressive behavior primarily against staff members who were attempting to help her. Those behaviors included hitting, biting, elopement and stabbing staff with pencils. In addition, she exhibited 98 severe self-injurious behaviors including banging her head on hard surfaces, scratching and biting her own hands and arms and frequently drawing blood. Those instances typically occurred several times per day." This is suggestive of there being a

3

need for consistent and astute medication management to address these aggressive, assaultive and self-endangering behaviors which seems to have not been made available to Brooke. One can extrapolate therefore, that if Brooke was adequately medicated with an effective medicine at a minimum effective dose, these aggressive episodes could have been reduced in frequency and intensity.

A record from St. Luke's Behavior Health was mentioned in Ms. Scianna's deposition as evidence of Brooke's severe reaction to Haldol. The records states "Haldol 5mg IM BID PRN severe psychotic agitation". The common meaning of such note is Haldol was given as needed for severe psychotic agitation and was not the cause of severe psychotic agitation.

While Brooke was admitted to Abrazo Arrowhead Campus from 8/22/18 – 8/25/18 there is a detailed account of 8 doses of Haldol given to Brooke in response to her aggressive behavior and no indication of any side effects.

Upon Brooke's arrival at Aurora Behavioral Healthcare on 8/26/2018 a psychiatric evaluation was prepared by Krzystztof Mlak, M.D. Dr. Mlak documented that Brooke presents with severe developmental disability complicated by poor impulse control and emotional dysregulation with frequent self-injury and explosive aggressive outburst. Dr. Mlak prescribed Thorazine.

Thorazine is one of the first antipsychotics to be developed. It was synthesized on 12/11/1951 by Paul Charpentier, in the laboratories of Rhône-Poulenc, a French pharmaceutical company, and released for clinical investigation in May 1952 as a possible potentiator of general anesthesia. This medicine has long been used as an antipsychotic with tremendous benefit in nearly all patients who have suffered from agitation, psychosis, extreme emotional distress and aggression. It is considered one of the first line meds for use in the developmentally delayed and neuroatypical (autism spectrum disorder) population. It generally helps manage and reduce aggressive behavior in such individuals. But each person is different and not every medicine works for every patient. In the case of Brooke, while she was getting treatment at Aurora Special Needs Unit after a reasonable trial period it was not helpful. Therefore, Dr. Mlak elected to explore another medicine to help with addressing the aggressive and self-injurious behaviors.

On 9/7/2018, Dr. Mlak documented a psychiatric progress note indicating Brooke was observed, chart reviewed, staff provided input and case was discussed during treatment team meeting. Brooke remained labile and often times agitated. This morning she has repeatedly attacked her staff. She is restless and pacing from the unit to the swing over 20 times so far today. She engages in repetitive behavior (closing door and placing cups upside down and stacking them). She becomes highly distressed if interrupted. Brooke exhibits poor frustration tolerance. She engages in self-injury by head banging and hand biting. Her preferred sensory interventions are not helping her calm herself. She received a PRN mediation (Thorazine) this morning due to aggression. Staff continue to monitor for sexualized behaviors. Her sleep onset has been more consistent but wakes up in mid-cycle.

Dr. Mlak discontinued Thorazine and recommended Haldol 1mg TID for mood instability not responding to 1st and 2nd line treatment. On 9/10/2018, Dr. Mlak increased Haldol after Brooke has been severely agitated throughout the weekend and escalated to a physical hold yesterday night. She has been aggressive and reacts quickly to minor trigger such as someone using the sensory swing and being asked to wait her turn. She struck author in the head when she could not leave the unit. She has been hitting peers. Brooke exhibited poor frustration tolerance and has limitation in making her needs known. She continues to

engage in mild self-injury mains sensory driven biting of her hand. She has received PRN over the weekend on several instances. Compulsive behavior has been increased and is forcibly taking items away from staff and peers and is stacking cups and kicking up chairs while in gym and closing doors throughout the unit. This led to agitation if she is interrupted.

The use of Haldol in this case by Dr. Mlak is within the standard of care and appropriate to help mitigate the aggressive and self-destructive behaviors exhibited by Brooke. The side effects of Haldol are usually less severe than other antipsychotics. It tends to have a much better metabolic profile (does not tend to cause weight gain, diabetes, eventual heard disease) like some second generation antipsychotics. The involuntary movements can be treated with an additional medicine like Cogentin or Artane at low doses. These medications are generally well tolerated. Haldol tends to not cause increased prolactin (milk producing hormone) which can be an issue with people needing to take a medicine consistently.

Dr. Clark, in his opinion, notes that Haldol has "severe side effects." If one weighs the benefits of this medicine against the persistent aggression and self-harm that Brooke was requiring inpatient psychiatric stabilization for, then it makes common sense to reduce the intensity of the behaviors that caused her to require admission to an inpatient hospital with the use of this medicine. It is worth noting that the extra-pyramidal side effects that were caused by Haldol were resolved and managed well with the addition of Cogentin in the case of Brooke, during this hospitalization. I believe that because Brooke was not on a consistent medication regimen to help with these behavior outbursts while in the community, Dr. Mlak was reasonably exploring a definitive medical treatment to aid in her being able to be safe in the community after her eventual discharge. Dr. Mlak's treatment plan was reasonable and prudent and complied with the standard of care.

After a reasonable trial period, Dr. Mlak discontinued the Haldol. The use of Haldol however did not cause Brooke any long-term harm and was necessary to address her aggression and self-harming behavior.

Based on my education, training and experience, Dr. Mlak provided reasonable and appropriate care to Brooke Scianna. Dr. Mlak met the standard of care in all respects. Dr. Mlak appropriately and thoroughly evaluated Brooke upon admission. He reviewed the available medical history and repeatedly sought input from Ms. Scianna who did not return numerous calls. In a case such as this where the patient is persistently aggressive, hurting staff members and herself, time is a precious commodity. Therefore, any reasonable psychiatrist treating such a patient is compelled to reduce the possibility of continued harm and detriment to the patient and expedite the astute medication management as soon as possible. To that end, as a medical provider, Dr. Mlak made medical decisions based on his education, training and experience and his evaluation of Brooke and the records available to him. His decision to prescribe Haldol to Brooke was due in part to her aggressive behavior as documented in the records. Dr. Mlak could also rely on Haldol's long history of success in treating patients with autism spectrum disorder. Dr. Mlak could also rely on the Abrazo Arrowhead Hospital's recent successful use of Haldol without side effects prior to Brooke's admission to Aurora. It is worth noting that Brooke was appropriately monitored and evaluated for side effects while she was being treated with Haldol.

**Dr. Clark's Opinions**

I have reviewed the report prepared by Dr. Clark and disagree with his opinions. Dr. Clark believes that Dr. Mlak's treatment of Brooke during her Aurora hospitalization fell below the standard of care in that

he believes Dr. Mlak failed to obtain an adequate history around Brooke's prior psychiatric treatment prior to prescribing her Haldol and failed to take account of Ms. Scianna's experience or concerns in that regard.

As noted above, and documented repeatedly in the medical records, repeated attempts were made to contact Ms. Scianna and it was documented that she did not return their numerous calls. Dr. Mlak reviewed the medical records that were available to him including the records from Abrazo Arrowhead Hospital where Brooke was given Haldol without any side effects.

When Dr. Mlak was finally able to speak with Ms. Scianna, she did not provide any documentation or records regarding any medication history, side effects and/or allergies for Brooke. Dr. Mlak listened to her concerns, answered her questions, and explained his treatment plan. Dr. Mlak met the standard of care in all respects with regard to obtaining a medical history and providing care and treatment to Brooke based on his education, training and experience.

**Autism Background**

Autism Spectrum Disorder (ASD) is a neurodevelopmental disorder characterized by persistent impairments in reciprocal social communication and social interactions along with the presence of restricted, repetitive patterns of behaviors, interests, or activities. There are no medications developed specifically for autism, but some drugs can modify behaviors associated with the condition. After stimulants, antipsychotics are the drugs most often prescribed to ease traits that accompany autism, including irritability, aggression, repetitive behaviors and hyperactivity.

**Haldol**

Haloperidol was discovered in 1958 by Paul Janssen, prepared as part of a structure-activity relationship investigation into analogs of pethidine (meperidine). It is on the World Health Organization's List of Essential Medicines. It is the most commonly used typical antipsychotic.

Numerous research and peer review articles support Haldol's role in the use of the treatment of autism spectrum disorder with or without aggression. They support using Haldol in the infantile period as well as lifelong. Haldol is widely well tolerated, has a better side effect profile in the domains of metabolic side effects compared to newer medicines, has improved sedation and EPS compared to older agents and has over 60 years of documented benefit ascribed to it for the treatment of various psychiatric maladies, including Autism. It is widely used to help reduce aggression and agitation in the emergency department and inpatient floors as these can cause harm to the patient and staff.

When presented with a patient who is persistently and acutely aggressive towards others and themselves and when medications like Thorazine are not beneficial, reasonable psychiatrists would consider using Haldol because of its fast action. As stated earlier, in cases such as Brooke's where the longer she would be allowed to remain aggressive, the more harm she could bring to herself and others. Haldol is a reasonable choice to address these behaviors urgently. The dose titration of Haldol at the rate it was done to address aggressive behaviors were reasonable and appropriate in my opinion, due to the safety concerns that prolonged aggression could lead to permanent harm to the patient and possibly other patients in the milieu and staff members. The priority of the treating psychiatrist in such cases is to help ensure safety of the patients and staff on the inpatient psychiatric floor. The strategy of increasing the dose quickly to arrest aggressive

behaviors and then start to reduce the dose after the behaviors have been arrested is a sound one. This medication management is not uncommon on psychiatric inpatient units in Arizona and throughout the US when the patient and others are at risk of harm because of the behaviors.

I reserve the right to supplement my opinions once the deposition of Dr. Clark is completed.

Jahanzeb Ali Khan, M.D.