EXHIBIT 3

MICHAEL K. JEANES, CLERK
BY *C. Camacho* DEP
C. CAMACHO FILED

**18  JUN 27  AM 10: 54**

1    MARK BRNOVICH
2    Attorney General

3    SCOTT A. CHRISTENSEN
4    Assistant Attorney General
     State Bar No. 024676
5    CFP/PSS
     2005 North Central Avenue, C007AG
6    Phoenix, Arizona 85004
7    (602) 542-1645
     PSSDurango@azag.gov
8
9    Attorneys for the Department of Child Safety

10             IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

11                IN AND FOR THE COUNTY OF MARICOPA

12   In the matter of:                          No. _____ JD 3 6 0 3 4 ⁻
13
14   BROOKE ANGELINA SCIANNA                     DCS'S OUT OF HOME DEPENDENCY
         d.o.b. ▌▌▌▌▌▌                           PETITION AND PETITION FOR
17                                               PATERNITY AND/OR CHILD
                                                 SUPPORT
17
                                                 CHILDS NO. 511175
17
18   Person(s) under 18 years of age.           (Honorable _____ )

19        Petitioner, the Department of Child Safety (DCS or the Department), by and

20   through undersigned counsel, hereby alleges:

21

22                                      I.

23                                **Jurisdiction**

24        The Juvenile Court has exclusive original jurisdiction over dependency matters

25   pursuant to A.R.S. § 8-202(B).   The Superior Court has original jurisdiction in

26   proceedings to establish paternity pursuant to A.R.S. § 25-801.

27

28

## II.
## Venue

Venue in this county is proper pursuant to A.R.S. §§ 8-206(A) and 25-802 as Maricopa County is the residence of the child and/or the acts of dependency are alleged to have occurred in Maricopa County.

## III.
## Identity of Child, Placement and Applicability of the Indian Child Welfare Act

A.    BROOKE ANGELINA SCIANNA:

    1.    BROOKE ANGELINA SCIANNA is a female child whose date of birth is ███████.

    2.    BROOKE ANGELINA SCIANNA is a dependent child within the provisions of A.R.S. § 8-201(15).

    3.    BROOKE ANGELINA SCIANNA is currently placed with CARE AND DINITY, a group home.

    4.    Upon information and belief, BROOKE ANGELINA SCIANNA is not an Indian child as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4).

## IV.
## Parties

A.    CHRISTINE MARIE WEBSTER

    1.    Upon information and belief, the mother of the child is CHRISTINE MARIE WEBSTER, whose date of birth is ███████.

2.   Her address is ███████████████, Surprise, Arizona 85379. Her phone number is ███████.

B.   Upon information and belief, the following male individual is alleged to be the father of the child who is the subject of this Petition:

1.   JOHN RALPH SCIANNA, whose date of birth is July 31, 1970, is the father of BROOKE ANGELINA SCIANNA.  His address is ███████ ███████████████. His phone number is ███████.

## V.
## Temporary Custody

Upon information and belief, the child was taken into temporary physical custody on June 22, 2018 at 1:10 p.m.

## VI.
## Allegations

A.   Upon information and belief, the DCS alleges that the child is dependent due to abuse or neglect as to CHRISTINE MARIE WEBSTER.

1.   Mother is unwilling or unable to provide proper and effective parental care and control by neglecting to provide a safe and stable home environment and proper supervision and provide for the child's basic needs.  Brooke is diagnosed with an autism spectrum disorder and unspecified voice and resonance disorder.  She is low functioning and nonverbal and has behavioral episodes.  On or about June 11, 2018, after placing the child in an inappropriate choke hold during a behavioral episode, Mother went into the house and left the child unattended for about ten minutes while the child

1
2
3
4
5
6
7
8
9
10
11
12
13
14
17
17
17
18
19
20
21
22
23
24
25
26
27
28

wandered in the street.   She expected the school's transport staff to supervise the child.   Mother frequently could not be reached when the school called her for emergency pickups.   Mother stated that she sleeps upstairs on the opposite side of the house from the child and did not hear when the child once answered the door and allowed a stranger into the home.   Mother reports that when the child's behaviors escalate, she will frequently hide in the bathroom from the child.   There is also concern regarding Mother's mental health as several providers report that Mother's home has been observed as dirty and always kept dark.   Mother's behavior is erratic which is not consistent with a calm and stable environment conducive for the child with Brooke's behavioral issues to thrive.   Mother blames the school for the child's behavioral issues and states the child does not have the issues in her home; however, the communications between Mother and the school indicate that Mother has the same issues in her home.   It was also documented by school staff that Mother and Father were not in agreement regarding the child's medication and that Mother changed the child's medications at least five times within a span of 20 days.

2.   Mother's home is unfit by reason of abuse and failure to protect from abuse. On or about June 11, 2018, Mother and her significant other were observed placing the child, Brooke, in an inappropriate hold to contain her behaviors. They held her against the wall by her neck.   It is unknown if the child's breathing was impeded because she is nonverbal and unable to

4

communicate this concept.  Brooke had a red mark and scratch on her neck after the incident.

B.       Upon information and belief, the DCS alleges that the child is dependent due to abuse or neglect as to JOHN RALPH SCIANNA.

    1.       JOHN RALPH SCIANNA was married to CHRISTINE MARIE WEBSTER.

    2.       JOHN RALPH SCIANNA has established his paternity of BROOKE ANGELINA SCIANNA by marriage.

    3.       JOHN RALPH SCIANNA does have an order granting him custody of BROOKE ANGELINA SCIANNA.

    4.       JOHN RALPH SCIANNA does not have a child support order as to BROOKE ANGELINA SCIANNA.

    5.       Father is unwilling or unable to provide proper and effective parental care and control by neglecting to provide for the child's basic needs.  Father has failed to provide support for the child, including food, shelter, clothing, proper supervision, and/or medical care.  Brooke is diagnosed with an autism spectrum disorder and unspecified voice and resonance disorder.  She is low functioning and nonverbal and has behavioral episodes.  Father did not attend the child's medical appointments or stay up to date on what medications she was on.  Father did not allow the child's DDD supports in his home to work with the child.  Father had concerns about what may be occurring in Mother's home but did not take any actions to protect his child.

Father stated he does not have a home that the child can reside in with him at this time.

## VII.
## Facts Supporting Contrary to the Welfare of the Child Finding

Continuation of the child in the home would be contrary to the child's welfare. The finding is supported by the following facts and the above listed allegations, incorporated herein: Brooke is diagnosed with an autism spectrum disorder and unspecified voice and resonance disorder. She is low functioning and nonverbal and has behavioral episodes. On or about June 11, 2018, Mother and her significant other were observed placing the child, Brooke, in an inappropriate hold to contain her behaviors. They held her against the wall by her neck. It is unknown if the child's breathing was impeded because she is nonverbal and unable to communicate this concept. Brooke had a red mark and scratch on her neck after the incident. After placing the child in an inappropriate choke hold during a behavioral episode, Mother went into the house and left the child unattended for about ten minutes while the child wandered in the street. She expected the school's transport staff to supervise the child. Mother frequently could not be reached when the school called her for emergency pickups. Mother stated that she sleeps upstairs on the opposite side of the house from the child and did not hear when the child once answered the door and allowed a stranger into the home. Mother reports that when the child's behaviors escalate, she will frequently hide in the bathroom from the child. There is also concern regarding Mother's mental health as several providers report that Mother's home has been observed as dirty and always kept dark. Mother's behavior is erratic which is not consistent with a calm and stable environment conducive for the

child with Brooke's behavioral issues to thrive.  Mother blames the school for the child's behavioral issues and states the child does not have the issues in her home; however, the communications between Mother and the school indicate that Mother has the same issues in her home.  It was also documented by school staff that Mother and Father were not in agreement regarding the child's medication and that Mother changed the child's medications at least five times within a span of 20 days.  Father did not attend the child's medical appointments or stay up to date on what medications she was on.  Father did not allow the child's DDD supports in his home to work with the child.  Father had concerns about what may be occurring in Mother's home but did not take any actions to protect his child.  Father stated he does not have a home that the child can reside in with him at this time.

## VIII.
### Facts Supporting Reasonable Efforts Finding

It is further requested that the Court find, based upon the verified allegations of the petition, that the Petitioner has made reasonable efforts to prevent removal of the child from the home. The finding is supported by the following facts:  A family meeting was held in the Peoria DCS Office on June 18, 2018, with Mother, Father, their significant others, the child's team of providers and DCS in attendance.  It was determined by the team that the level of care needed for the child surpassed what parents and supports were able to provide in order for the child and the people around her to be safe.  The parents disagreed but reluctantly agreed to look into DDD group homes for the child as they wanted to retain their rights to the child.  The next day, Mother changed her mind about

seeking services on her own and stated that she would not agree to have the child out of her home and wanted court involvement.

## IX.
### Facts Supporting Relative or Non-Relative Placement

The Department has made attempts to identify and assess placement with the child's grandparent or extended family.  Placement of the child with a relative or another member of the child's extended family is not in the child's best interest because Mother and Father were unable to provide DCS with any appropriate kinship placements at this time.  The child has significant mental and/or behavioral health needs and requires a structured environment or higher level of care that the family is not able to provide.  The child's current placement is the least restrictive consistent with the needs of the child.

## X.
### Financial Responsibility for the
### Support of the Child

The parent(s) should pay an appropriate amount as determined by law for the care, maintenance and support of the child while in care pursuant to A.R.S. §§ 8-241, 8-243 and 8-243.01.

## XI.
### Authority to Consent to Treatment

As legal custodian of BROOKE ANGELINA SCIANNA and in furtherance of A.R.S. § 8-512 and the DCS's obligation, if any, to provide behavioral health or medical services to a child in the DCS's legal custody, the DCS requests permission to consent to

necessary medical care and treatment including general anesthesia and surgical procedures.

## XII.
## Education

With regard to possible special education issues of any child named herein who is not placed with a parent, or for any child subsequently removed from a parent(s) physical custody, the DCS hereby requests an order providing that:

1.    In the event a public education agency or Arizona early intervention provider advises DCS that it needs to locate a parent of any child named in this petition to serve as the Individuals With Disabilities Education Act (IDEA) parent for that child and a parent can no longer be located by DCS; or

2.    In the event the parent or legal counsel for the parent tells the public education agency, or DCS/its legal counsel that the parent will not serve as the IDEA parent for the child named in this petition; or

3.    If the parent is subject to a no contact order as to this child; or

4.    If a public education agency or an Arizona early intervention provider following reasonable efforts to try and get a parent to respond to its requests to act as the IDEA parent for a child named in this petition, fails to obtain a response or any cooperation of a parent, an adult relative, stepparent, or foster parent with whom the child lives (but not staff of a group home or other residential facility) shall have authority to serve as the IDEA parent.

The IDEA parent represents the child's special education interests under Parts B or C of the IDEA. The purpose of such representation is to ensure that a child with a suspected/known disability receives prompt assessment and evaluation for eligibility for early intervention services or appropriate educational services, which may include special education and related services designed to meet the child's unique needs.

## REQUEST FOR RELIEF

Based upon the foregoing allegations, immediate action is required.

WHEREFORE, the DCS requests this Court find and/or order that:

1. The Juvenile Court has jurisdiction over the subject matter and, after proper service on the parents and/or guardians, the persons before this Court;

2. Venue is proper in this county;

3. Continuation of the child in the home would be contrary to the welfare of the child;

4. The DCS made reasonable efforts to prevent removal of the child from the home;

5. The Department made attempts to identify and assess placement with a grandparent or extended family and such a placement is not in the child's best interest at this time;

6. BROOKE ANGELINA SCIANNA is not an Indian child as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4);

7.     The child is a temporary ward of the Court, placed in the care, custody and control of the DCS, 3003 North Central Avenue, Phoenix, Arizona 85012, and;

    a.     Placing the child in the physical custody of CARE AND DINITY;

    b.     Authorizing DCS to consent to evaluation and treatment for medical and dental care upon recommendation of a health care provider, including general anesthesia, surgical procedures, blood transfusions, pelvic examinations and testing for the Human Immunodeficiency Virus (HIV); and

    c.     Authorizing DCS and the child's placement to consent to education and social activities on behalf of the child;

8.     A Preliminary Protective Hearing be set pursuant to A.R.S. § 8-824, an Initial Dependency Hearing pursuant to A.R.S. §§ 8-842 and 8-843, a Publication Hearing, and a Permanency Hearing pursuant to A.R.S. § 8-862;

9.     The matter be assigned to the Court-Appointed Special Advocate (CASA) Program to determine if it is appropriate for the assignment of an advocate;

10.    The matter be assigned to the Foster Care Review Board (FCRB) to perform the duties required by statute;

11.    All persons are prohibited from removing the child from the State of Arizona without prior written approval of the DCS;

12.    Any judgment and orders for the care, paternity, custody, support or such other relief, as the child's welfare and the interests of the State may require under the provisions of Title 8 and Title 25 of the Arizona Revised Statutes;

13.    The parent(s) or legal guardian(s) shall provide the DCS Child Safety Worker or its attorney with a recent educational history (including the name(s) and location(s) of the school(s) each child named in the Petition recently attended and the grade in which each child was most recently enrolled.)  The parent(s) or legal guardian(s) shall also provide or confirm the date of birth of each child named in the Petition;

14.    An individual other than a biological or adoptive parent is authorized to act as the IDEA parent under the circumstances delineated herein;

15.    All medical, dental and mental health providers, health plans, Regional Behavioral Health Authorities (RBHAs), as well as other Health Insurance Portability and Accountability Act (HIPAA) covered providers who have provided any services to the child, make available to any guardian ad litem for the child and/or attorney for the child the various medical, dental, mental health, genetic and other health care records of the child;

16.    **The parent, guardian or Indian custodian be advised as follows;**

     a.    **Failure to appear without good cause may result in a finding that the parent, guardian or Indian custodian has waived his/her legal rights and admitted the allegations in the dependency petition;**

12

b.      That hearings may go forward in his/her absence and may result in an adjudication of dependency, permanent guardianship or termination of parental rights based upon the record and evidence presented to the Court, as well as an order of paternity, suspension or termination of an existing current child support order, custody, or change of custody in a consolidated family law matter and an order for child support if paternity has been established;

c.      Proceedings for permanent guardianship pursuant to A.R.S. §§ 8-871 and 8-872 or proceedings for termination of parental rights pursuant to A.R.S. § 8-533 may be initiated based upon the grounds set forth in statute or for failure to participate in reunification services; and

d.      If a child is under three years of age, within six months after removal from the home, the Court will determine whether the parent, guardian or Indian Custodian has substantially neglected or willfully refused to participate in reunification services offered by the DCS; admonish the parent, guardian or Indian Custodian that substantially neglecting or willfully refusing to remedy the circumstances that cause a child to be in an out-of-home placement, including refusing to participate in

13

**reunification services, is a ground for termination of parental rights; and**

17.     The parent(s) or legal guardian(s) provide to this Court, as required by A.R.S. § 8-841(D)(5), at the Preliminary Protective Hearing and/or the Initial Dependency Hearing:  the names, type of relationship, and all available information necessary to locate persons related to the child or who have a significant relationship with the child.  Persons related to the child include the child's grandparents, great-grandparents, brothers or sisters of whole or half-blood, aunts, uncles and first cousins. If the parent(s) or legal guardian(s) do not have sufficient information available to locate a relative or person with a significant relationship with the child, the parent or guardian must inform this Court of this fact.  The parent(s) or legal guardian(s) must inform the DCS immediately if the parent(s) or guardian(s) becomes aware of information related to the existence or location of a relative or person with a significant relationship with the child.

18.     Notice is given that DCS is proposing to substantiate any allegations of abuse and/or neglect contained in the dependency petition for placement in the DCS Central Registry.  The DCS Central Registry is a confidential list of DCS findings that tracks abuse and neglect.  If the court finds your child dependent based upon allegations of abuse and/or neglect contained in the dependency petition, you will be placed in the DCS Central Registry.  See A.R.S. § 8-804.

14

19.    Notice is given that under the Arizona Rules of Family Law Procedure 5.1(E), during any dependency/guardianship proceeding in the juvenile division, the assigned juvenile division may suspend, modify, or terminate a child support order for current support if the parent entitled to receive the child support no longer has legal or physical custody of the child, and, except in Title IV-D cases may make appropriate orders regarding any past due support or child support arrears.  The assigned juvenile division may direct that the wage assignment be quashed or modified.

RESPECTFULLY SUBMITTED this 27th day of June, 2018.

MARK BRNOVICH
Attorney General

SCOTT A. CHRISTENSEN
Assistant Attorney General

15

1  ORIGINAL of the foregoing filed
2  this _27_ day of June, 2018, with:

3  Clerk of the Court
4  Maricopa County Superior Court
   Juvenile Division/Durango Facility
5  3131 West Durango
6  Phoenix, AZ 85009-6292

7  Copy of the foregoing hand-delivered
   this _27_ day of June, 2018, to:
8

9  Honorable _____
   Maricopa County Superior Court
10 Juvenile Division/Durango Facility
11 3131 West Durango
   Phoenix, AZ 85009-6292
12

13 Copies of the foregoing mailed
   this _27_ day of June, 2018, to:
14

   Foster Care Review Board
17 1701 W. Washington, Suite 128
   Phoenix, Arizona 85007
17

17 Tina N. Canale
   Child Safety Worker
18 Site Code:  140A

19

20

21

22 HD/SCIANNA/WEBSTER/HDM#7129575

23

24

25

26

27

28

CSO-1000A (11-17)
PAGE 2 ON REVERSE

# ARIZONA DEPARTMENT OF CHILD SAFETY
## TEMPORARY CUSTODY NOTICE

On *(Date)* _____ At *(Time)* _____ ☐ AM ☐ PM , temporary custody of *(child's name)* _____
was taken at *(Address)* _____ by *(Agency)* _____

**Type of abuse or neglect requiring temporary custody:** ☐ Neglect ☐ Abuse ☐ Abandonment

**Select the circumstance(s) that most clearly describe the danger to the child(ren) and reason temporary custody was necessary:**

☐ Medical or psychological examination is required to diagnose abuse or neglect.
☐ The child is unsupervised or alone now or on a daily basis, or has been left with a person who is unwilling or unable to provide adequate care.
☐ The caregiver is unable to perform essential parental responsibilities due to substance use, mental illness, physical impairment, cognitive limitations.
☐ The caregiver is unable or unwilling to perform essential parental responsibilities and there is no other appropriate caretaker immediately available.
☐ The caregiver is out of control and cannot focus or manage his/her behavior in ways to properly perform parental responsibilities.
☐ The caregiver's behavior is violent, bizarre, erratic, unpredictable, incoherent, or totally inappropriate and is a threat to child safety.
☐ The caregiver is brandishing weapons, known to be dangerous and aggressive, or is behaving in attacking or aggressive ways that are a threat to child safety.
☐ The caregiver has not, cannot, or will not protect the child from serious or severe harm, including harm from other persons having access to the child.
☐ Dynamics in the household include a person establishing power, control, or coercion over a caregiver in a way that impairs necessary supervision or care of the child and has caused, or will likely cause, serious or severe harm to the child's physical, mental, or emotional health.
☐ The caregiver has an extremely negative perception of the child, and/or has extremely unrealistic expectations for the child's behavior.
☐ Physical conditions in the home are hazardous and immediately threaten the child's safety.
☐ The caregiver is subjecting the child to brutal or bizarre punishment or there is severe to extreme maltreatment alleged to be occurring.
☐ The child requires immediate medical attention, and the absence of medical treatment could seriously affect the child's health and well-being.
☐ The child is actively endangering self or others and the caregiver cannot or will not control the child's behavior or arrange or provide necessary care.
☐ There is evidence of recent sexual abuse, the perpetrator currently has access to the child, and no protective action is being taken by a caregiver.
☐ The child has injuries such as facial bruises, injuries to the head, multiple plane injuries, injuries to a non-ambulatory child, immersion burns.
☐ The child has serious injuries that the caregivers and others cannot or will not explain, or the explanation is inconsistent with the child's injuries or condition.
☐ The caregiver deliberately harmed the child, or caused or threated to cause serious or severe harm to the child.
☐ The child is profoundly fearful (terrified) of their present home situation, or a particular person living in or having access to the home.
☐ Caregiver previously endangered a child and/or caused harm to a child and circumstances indicate the person will likely cause severe harm to the child.
☐ There is evidence of abuse or neglect and the caregiver cannot produce the child, refuses access to or is likely to flee with the child, or actively avoids DCS.
☐ Criminal activity by the caregiver or criminal activity of other persons living in or having access to the home will likely result in severe harm to the child.

**The Department of Child Safety (DCS) must:**

• Return your child within **72 hours** *(not including weekends and holidays)* unless DCS files a legal paper, called a petition, with Juvenile Court. If a petition is filed, your child will be kept in the temporary custody of DCS.

• Return your child within **12 hours** if your child was removed to be examined by a medical doctor or psychologist, unless abuse or neglect is diagnosed, **and**

• Inform you of the right to give a verbal, telephonic or written response to the allegations and have the response included in the investigation report. Any documentation you give, what you say or write, will be included in the case record and can be used in court proceedings.

| DCS REPRESENTATIVE'S NAME *(Please print)* | AREA CODE AND PHONE NO. |
|---|---|
| | |

ARIZONA DEPARTMENT OF CHILD SAFETY ADDRESS *(No., Street, City, State, ZIP)*

| DCS SUPERVISOR'S NAME *(Please print)* | AREA CODE AND PHONE NO. |
|---|---|
| | |

**METHOD OF NOTICE:** On *(date)* _____ at *(time)* _____ ☐ AM ☐ PM , I served notice to *(parent, guardian or custodian) (print name)* _____

Method used: ☐ In-Person ☐ Left at Residence ☐ Verbal ☐ Fax/Email    Date: _____ Time: _____
Address where mailed/left/given (No., Street, City, State, ZIP)

**What is the child or child's parents American Indian heritage/ancestry:** _____    Has the tribe been notified? ☐ Yes ☐ No ☐ N/A

PARENT, GUARDIAN OR CUSTODIAN'S SIGNATURE

| DCS REPRESENTATIVE'S SIGNATURE *(Or law enforcement officer)* | DATE |
|---|---|
| | |

ROUTING: Original – Parent/Guardian/Custodian; 1ˢᵗ Copy – Sent to Assistant Attorney General to file with the Petition; 2ⁿᵈ Copy – Retained in the case record

1
2

## VERIFICATION

STATE OF ARIZONA      )
3                               ) ss.
4 COUNTY OF MARICOPA   )

5
6       I, Christi Johnson, being duly sworn, upon oath depose and say:

7       I am an employee of the Petitioner, the Department of Child Safety, and I have

8 been authorized to make this verification on its behalf.  I have read the foregoing Petition

9 and believe upon information and belief that the contents thereof are true and correct.

10
11
12 Signature of Christi Johnson

13
14 DCSPS
Title

17
17
17       SUBSCRIBED and SWORN to before me this _27_ day of June, 2018.

18
19 JULIE J. ERICKSON
Notary Public · State of Arizona
20 MARICOPA COUNTY
My Commission Expires
April 24, 2021
21                                                Notary Public

22
23 HD/SCIANNA/WEBSTER/HDM#7129575
24
25
26
27
28

18