# EXHIBIT 4

CHRIS DEROSE, CLERK
BY _____ DEP
C. Camacho
C. CAMACHO, FILED

18 OCT 31 PM 2: 18

DeeAn Gillespie Strub #009987
**GILLESPIE, SHIELDS, DURRANT & GOLDFARB**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
Email: mailroom@gillaw.com
*Attorneys for Mother/Christine Scianna*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA, JUVENILE DIVISION

| | |
|---|---|
| In re: the Matter of:<br><br>BROOKE ANGELINA SCIANNA<br>d.o.b. ▮▮▮▮▮▮<br><br>a Person under 18 years of age. | Case No. JD36034<br><br>**MOTION FOR CHANGE OF PHYSICAL CUSTODY PURSUANT TO RULE 59**<br><br>*(Assigned to Hon. Nicolas Hoskins)* |

**Christine Scianna** ("Mother") through undersigned counsel and pursuant to Rule 59 Juv. Ct. Rules of Proc., hereby respectfully requests this Court order the return of physical custody for **Brooke Angelina Scianna**, d.o.b. ▮▮▮▮▮▮, ("the Minor Child") to Mother. In support of this Motion, Mother states the following information.

**I. BACKGROUND**

As of this writing, the Minor Child has been hospitalized at Aurora Behavioral Health for an unprecedented sixty-seven (67) days. Such lengthy confinement is surely doing the child more harm than good. The Minor Child is profoundly autistic and unable to communicate verbally to articulate her distress. Instead, her behavior becomes dysregulated as an indicator of stress. In addition to autism, the Minor Child suffers

from a muscle disorder, as well as the contributing factors thereto. There are also medication management and behavioral concerns.

Mother is well-informed and knowledgeable about the Minor Child's medical needs and history, having been present throughout the child's life. Service providers unfamiliar with the Minor Child's complex medical history find it challenging to provide the child with appropriate, well-informed care. Unfortunately, the service providers in this case have been following a narrative promulgated by DCS instead of taking Mother's experience into account.

DCS wrongfully removed the Child from Mother's care under the speculation that a group home would be a "better" environment for the Child. However, the ramifications of this wrong-headed case plan have been extreme. The Minor Child was severely neglected and was physically abused in the group home promoted by DCS. Her face was covered with grotesque rug burns, her hair was matted with chewing gum throughout, and her body was covered with various bruises. In addition to her considerable injuries, the Child was left to languish without stimulation. The Minor Child has only attended one (1) day of school since being taken by DCS. She could have attended school pursuant to her IEP if DCS had followed through. DCS has never provided any explanation for the neglect and abuse the Child suffered while in their custody at the group home.

If DCS had been this Child's natural parent, this Child would have been removed from their care. DCS' claim to be able to provide more appropriate care than the Child's natural Mother is demonstrably false.

2

Another major concern occurred this summer during the Child's prolonged hospitalization, when the Minor Child was administered Haldol, a new medication with several adverse side effects. Unfortunately, the Minor Child was placed on a lengthy, ill-advised regimen of the drug with no consideration given for how the child would react, given her autism. Mother warned that the Child had previously had a very adverse reaction to this drug. Had the providers' listened to Mother's warnings, they might have prevented the Child from enduring considerable unnecessary trauma. In particular, the Minor Child has suffered needlessly from pronounced muscle stiffness, discomfort and pain due to this drug. She had to take *another* medication simultaneously to counteract the side effects of the Haldol. The medication also made her become lethargic and expressionless. DCS' response to these symptoms was to *increase* her dosage of this harmful drug. It was not until Mother intervened directly with the CEO of Aurora Behavioral Services that any change was effected, and even then it took over a week and a half to wean the Minor Child off the drug, and even longer for her to recover from the side effects.

The Child only shows improvement in her dysregulative behavior when she is permitted to see her Mother, whom she obviously adores, and from whom she seeks comfort and security. She proceeds to dysregulate further when she is compelled to separate again from her Mother. Should the Child be placed with Mother, these concerns will become a non-issue. Her Mother's comforting presence will help the Minor Child to stabilize emotionally. Ms. Theos, attorney for the Child, has already

3

affirmed that the Child would be best served by placement with Mother, and that DCS was violating the Child's civil rights through unnecessary restriction.

DCS' plan to find another group home placement is misguided. The Minor Child is triggered when other children around her become dysregulated. There is no group home that would protect the Child from exposure to such triggers, as these placements are all full of children with emotional concerns. Rather, the Child should be placed with her Mother, who could help her to regulate. DCS also failed to have the Child attend school whatsoever. Mother would facilitate the Child returning to an appropriate school setting to bring about a return to normalcy as soon as possible.

One of the Minor Child's care providers, CFSS, has offered to provide the Child (and by extension, Mother) with twenty-four (24) hour supervision. This would be a considerable boon to Mother, who must work a busy job in addition to serving as her child's primary care provider. Given the Minor Child's recent dysregulation, the presence of well-trained professionals would serve as considerable reinforcement for Mother.

## II. LEGAL ANALYSIS

Rule 59 (A) and (B), Ariz. R.P. Juv. Ct. and A.R.S. § 8-8614 states:

> "A. At any time after the temporary custody hearing, a parent, guardian, or Indian custodian may file a motion with the court requesting return of the Children to the custody of the parent, guardian or Indian custodian. The court shall set a hearing ***to determine whether return of the Children would create a substantial risk of harm to the Children's physical, mental or emotional health or safety***. (emphasis added)

4

The immediate return of the Minor Child to Mother's custody is absolutely within the Child's best interests. Her placement with Mother (with 24-hour professional support) would pose no risk of harm to the child's health or safety. By contrast, the Child's continued placement with DCS could place the Child at considerable risk of danger to her physical and mental health. DCS have already demonstrated their inability to protect or care for this Child in a group home setting.

### A. Mother is the Least-Restrictive Placement Available

Pursuant to A.R.S. §8-814.04, the State has the obligation to "preserve families." It is in the best interest of the Minor Child to be returned to Mother as soon as possible. State legislature mandates the Department place Minor Children in the least-restrictive placement available, as provided for in A.R.S. § 8-514 (B):

> The department shall place a Child in the least restrictive type of placement available, consistent with the needs of the Children. The order for placement preference is as follows:
>
> **1. With a parent.** (emphasis added)

This dependency proceeding should never have proceeded as to Mother and should be dismissed.

### B. Department Intervention Is Unnecessary

Under Arizona and United States Constitutional law, Mother has a fundamental right to parent her daughter. "A parent has a constitutional right to raise his or her Children without government intervention." *Carolina H. v. Arizona Dept. of Econ. Sec.*, 232 Ariz. 569, 571, ¶ 6, 307 P.3d 996, 998 (App. 2013) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "The government may not interfere with that fundamental right

The immediate return of the Minor Child to Mother's custody is absolutely within the Child's best interests. Her placement with Mother (with 24-hour professional support) would pose no risk of harm to the child's health or safety. By contrast, the Child's continued placement with DCS could place the Child at considerable risk of danger to her physical and mental health. DCS have already demonstrated their inability to protect or care for this Child in a group home setting.

### A. Mother is the Least-Restrictive Placement Available

Pursuant to A.R.S. §8-814.04, the State has the obligation to "preserve families." It is in the best interest of the Minor Child to be returned to Mother as soon as possible. State legislature mandates the Department place Minor Children in the least-restrictive placement available, as provided for in A.R.S. § 8-514 (B):

> The department shall place a Child in the least restrictive type of placement available, consistent with the needs of the Children. The order for placement preference is as follows:
>
> **1. With a parent.** (emphasis added)

This dependency proceeding should never have proceeded as to Mother and should be dismissed.

### B. Department Intervention Is Unnecessary

Under Arizona and United States Constitutional law, Mother has a fundamental right to parent her daughter. "A parent has a constitutional right to raise his or her Children without government intervention." *Carolina H. v. Arizona Dept. of Econ. Sec.*, 232 Ariz. 569, 571, ¶ 6, 307 P.3d 996, 998 (App. 2013) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "The government may not interfere with that fundamental right

unless a court finds that: (1) the parent is unable to parent the Children for any reason defined by statute; and (2) the parent has been afforded due process." *Id.*

In *Troxel v. Granville*, 530 U.S. 57, 68-69, 120 S. Ct. 2054, 2061, 147 L. Ed. 2d 49 (2000), our Supreme Court set forth the law on state interference in the absence of a fitness issue, as in this case. "Accordingly, so long as a parent adequately cares for his or her Children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's Children. *See, e.g., Flores*, 507 U.S., at 304, 113 S.Ct. 1439."

Absent a showing of unfitness (which **does not exist** here) the law presumes that Mother will act in the Child's best interest. "[T]here is a presumption that fit parents act in the best interests of their Children." *Troxel,* 530 U.S. at 68. The Supreme Court further noted that "We observe that the State registers no gain towards its declared goals when it separates Children from the custody of fit parents." *Stanley v. Illinois,* 405 U.S. 645, 652-53 (1972).

The time is long since past when this child should have been rightfully returned to the care of her loving Mother.

### III. CONCLUSION

The Minor Child only returns to regulated behavior when Mother expressly intervenes. DCS pushed to place the child in a group home setting, claiming it would ***prevent*** her from being hospitalized. The Minor Child has special needs, and DCS' gross mismanagement of her needs has subjected the child not only to an inappropriate group

6

home placement where she has suffered physical injury, but also an extended hospitalization. The Minor Child has been so traumatized by the abuse and neglect in the group home, coupled with the deprivation of her regular association with her Mother, that it took an extended period of time for her to stabilize. The return of the Minor Child to Mother's care should be expedited forthwith.

**WHEREFORE**, for all these reasons, Mother hereby requests the Court:

A. Grant the return of the Minor Child to her Mother with the assistance of 24-hour in-home care providers;

B. Dismiss the dependency; and

C. For such relief as this Court deems just and proper.

All parties have been notified of this Motion as of the time of filing, however no positions have been received as of this time.

RESPECTFULLY SUBMITTED this 30 day of October, 2018.

GILLESPIE, SHIELDS, DURRANT, & GOLDFARB

By: _____
DeeAn Gillespie Strub
Attorney for Mother, Christine Scianna

7

**ORIGINAL** of the foregoing filed this 30 day of October, 2018, with:

Clerk of the Court
MARICOPA COUNTY SUPERIOR COURT

COPY delivered/*emailed this same date to:

The Honorable Nicolas Hoskins
Maricopa County Superior Court

Monica Malhotra
Monica.malhotra@azag.gov
Assistant Attorney General

Tom Stubbs
stubbs@mail.maricopa.gov
Guardian ad Litem

Sara Smith
sarasmithlaw@gmail.com
Attorney for Father

Diana Theos
dianatheos@gmail.com
Attorney for the Child

By: /s/ Alexander Strub