# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CHRISTINE SCIANNA, et al.,          )
                                    )
         Plaintiffs,                )
                                    )
              vs.                   ) No. 2:21-cv-01444-DJH
                                    )
ARIZONA DEPARTMENT OF CHILD         )
SAFETY, et al.,                     )
                                    )
         Defendants.                )
_____)

**DEPOSITION OF MELISSA COURTRIGHT**

Phoenix, Arizona
January 22, 2024
1:15 p.m.

Prepared by:                          CARRIE REPORTING, LLC
MICHAELA H. DAVIS                     Certified Reporters
Registered Professional Reporter      17505 N. 79th Avenue
Certified Realtime Reporter           Suite 301-C
Certified Realtime Captioner          Glendale, AZ 85308
Certified LiveNote Reporter           (480) 429-7573
AZ CR No. #50574

(COPY)

|    |    |
|----|----|
| 1  | MR. PATEL:  Form and foundation. |
| 2  | THE WITNESS:  Correct. |
| 3  | BY MR. CONNELLY: |
| 4  | Q.    Do you think you have any obligation to |
| 5  | understand what the side effects or the risks of any |
| 6  | psychotropic medication are before you consent to the |
| 7  | administration? |
| 8  | MR. PATEL:  Form, foundation. |
| 9  | THE WITNESS:  No.  I didn't go to med |
| 10 | school.  If it's being recommended by a medical provider |
| 11 | for a child to receive a particular medication, I'm not |
| 12 | going to withhold that medication from the child if it's |
| 13 | the recommendation. |
| 14 | BY MR. CONNELLY: |
| 15 | Q.    So if a medical provider that the department has |
| 16 | somehow put in place or engaged in its provision of care |
| 17 | to a child it's taken into its custody says the child |
| 18 | needs this psychotropic medication -- Haldol, for |
| 19 | instance -- is it your position, then, that that |
| 20 | constitutes adequate medical care because a doctor is |
| 21 | saying this is what's needed and you don't need to make a |
| 22 | distinction between adequate versus major? |
| 23 | MR. HALL:  Form and foundation. |
| 24 | MR. PATEL:  Join. |
| 25 | THE WITNESS:  There's going to be a reason |

1  as to why this was a recommendation of the provider to
2  implement this particular drug to the child.  So I'm going
3  to ensure that the child is receiving the appropriate
4  medication that is being prescribed to them.  So, yes, I
5  believe that's adequate.
6  BY MR. CONNELLY:
7      Q.    So I'm just trying to understand, because we see
8  that the law makes a distinction between adequate versus
9  major; right?
10              MR. HUNTER:  Form, foundation.
11              MR. PATEL:  Join.
12              MR. HALL:  Join.
13              THE WITNESS:  There is two different
14 languages in here, yes.
15 BY MR. CONNELLY:
16     Q.    So I'm just trying to understand how, if at all,
17 that's implemented at the department, and it sounds to me
18 like what you're saying is the department doesn't take the
19 time to determine whether something is -- whether a
20 medication is adequate medical or major medical; if a
21 doctor is saying this is what I think should be prescribed
22 for the child, the department is just going to go ahead
23 and consent to that without seeking parental consent.
24              MR. PATEL:  Form and foundation.
25              MR. HALL:  Join.

1     MR. HUNTER: Form and foundation.
2     THE WITNESS: It's all a case-by-case, but
3  in the intermediate, if it's a medication that's needed
4  then and there or whatever, yes, it's going to be given to
5  ensure that the child is receiving care.
6  BY MR. CONNELLY:
7     Q.   Now, you've thrown another monkey wrench in
8  there.  You said it's going to be a case-by-case basis.
9            So are you saying that the department looks
10 at -- if a psychiatrist, like Dr. Mlak in this case, says
11 the child needs Haldol, does the department then look at
12 it and say, well, this is adequate versus major and then
13 determine whether or not they need to get parental
14 consent, or does the department just say go ahead and do
15 what you think is right?
16           MR. HALL:  Form and foundation.
17           MR. PATEL:  Form and foundation.
18           MR. HUNTER:  Join.
19           THE WITNESS:  Brooke in regards to the
20 Haldol was placed in a behavioral health facility that is
21 in the short-term to try to reduce certain behaviors.  So
22 when Dr. Mlak recommended Haldol for the child because of
23 her increase in behaviors, yes, we're going to say that
24 this is adequate to meet her needs at this point in time
25 because this is what she's exhibiting and this is her

1    *Q.*    9:40 a.m. is after hours?
2    *A.*    Oh, I'm sorry.  I was looking at medications
3 were given at 10:30 p.m.
4    *Q.*    Right.
5    *A.*    No, so I don't know what that call was for.
6    *Q.*    Okay.  So if a call comes in after hours and
7 it's for medications or to increase medications, the
8 person taking the call has the authority to give consent?
9    *A.*    They do.
10    *Q.*    And that's a standard practice at the
11 department?
12    *A.*    Yeah.  Based on the case and what's going on,
13 yes.
14    *Q.*    And there's no distinction made in the
15 department between whether or not the medications seeking
16 to be administered are adequate or major medical
17 treatment; right?
18        MR. PATEL:  Form and foundation.
19        MR. HUNTER:  Join.
20        THE WITNESS:  Can you say that again?  I'm
21 sorry.
22 BY MR. CONNELLY:
23    *Q.*    When the call comes in, there's no distinction
24 being made between whether or not this is an adequate
25 medical treatment or if it's a major medical treatment;

1  right?
2              MR. PATEL:  Objection.
3              MR. HALL:  Join.
4              MR. HUNTER:  Join.
5              THE WITNESS:  Depends on what's coming in on
6  the call.  I'm not the one taking the call to say if it's
7  adequate or major at the time.  I don't know what is being
8  received.
9  BY MR. CONNELLY:
10     Q.    Well, okay.  Let's look at page 195.
11           On page 195, there's this long narrative CFT
12  note, and it says that you created this note; right?  On
13  the preceding page?
14     A.    Yes.
15     Q.    And what prompted the note?
16     A.    We had a meeting, I don't know, and I documented
17  it.
18     Q.    Okay.  It says "CFT Notes" up at the top.
19           Do you see that?
20     A.    I do.
21     Q.    These are notes, then, that you made following a
22  CFT?
23     A.    During or following, yes.
24     Q.    So it's a CFT that occurred on 9/25/2018 --
25     A.    That's the event date I placed, yes.

1                 MR. HALL:  Join.
2                 THE WITNESS:  I can't speak to that, no.
3                 MR. CONNELLY:  Right.
4                 I don't have anything else.  Thank you.
5                 MR. PATEL:  We'll read and sign.
6
7                 (WHEREUPON, this deposition concluded at
8     6:13 p.m.)
9
10
11
12                              _____
13                              MELISSA COURTRIGHT
14
15
16
17
18
19
20
21
22
23
24
25

```
 1   STATE OF ARIZONA    )
                         ) ss.
 2   COUNTY OF MARICOPA  )

 3

 4           BE IT KNOWN that the foregoing proceedings were
     taken by me, MICHAELA HERMAN DAVIS, a Certified Reporter,
 5   in and for the County of Maricopa, State of Arizona; that
     the witness before testifying was duly sworn to testify to
 6   the whole truth; that the questions propounded to the
     witness and the answers of the witness thereto were taken
 7   down by me in shorthand and thereafter reduced to
     typewriting under my direction; that the foregoing pages
 8   are a true and correct transcript of all proceedings had,
     all done to the best of my skill and ability.
 9
             I CERTIFY that I am in no way related to any of
10   the parties hereto, nor am I in any way interested in the
     outcome hereof.
11
                 [X] Review and signature was requested.
12               [ ] Review and signature was not requested.
                 [ ] Review and signature was waived.
13

14           I FURTHER CERTIFY that I have complied with the
     ethical obligations set forth in ACJA 7-206(F)(3) and
15   ACJA 7-206(J)(1)(g)(1) and (2).  Dated at Phoenix, Arizona,
     this 6th day of February, 2024.
16

17

18                       _____
                         Michaela H. Davis, RPR, CRR, CRC, CLR
19                              Arizona CR No. 50574

20

21
             I CERTIFY that Carrie Reporting, LLC, has
22   complied with the ethical obligations set forth in
     ACJA 7-206.  Dated at Phoenix, Arizona, this 8th day of
23   February, 2024.

24                       _____
                                   Carrie Reporting, LLC
25                              Arizona RRF No. R1064
```

CARRIE REPORTING, LLC - Certified Reporters
(480) 429-7573    carrie@carriereporting.com