Exhibit **2**

MICHAEL K. JEANES, CLERK
BY
C. Camacho
DEP
C. CAMACHO FILED

18 JUN 27 AM 10: 54

| | |
|---|---|
| 1 | MARK BRNOVICH |
| 2 | Attorney General |
| 3 | SCOTT A. CHRISTENSEN |
| 4 | Assistant Attorney General |
| 5 | State Bar No. 024676 |
| | CFP/PSS |
| 6 | 2005 North Central Avenue, C007AG |
| 7 | Phoenix, Arizona 85004 |
| 8 | (602) 542-1645 |
| | PSSDurango@azag.gov |

9      Attorneys for the Department of Child Safety

10                  IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

11                      IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| 12 | In the matter of: |
| 13 | |
| 14 | BROOKE ANGELINA SCIANNA |
| 17 | ▇▇▇▇▇▇▇▇ |
| 17 | |
| 17 | |
| 18 | Person(s) under 18 years of age. |

No. ___ **JD 3 6 0 3 4** ⁻

**DCS'S OUT OF HOME DEPENDENCY PETITION AND PETITION FOR PATERNITY AND/OR CHILD SUPPORT**

CHILDS NO. 511175

(Honorable _____)

19      Petitioner, the Department of Child Safety (DCS or the Department), by and

20 through undersigned counsel, hereby alleges:

21

22                                  **I.**

23                          **Jurisdiction**

24      The Juvenile Court has exclusive original jurisdiction over dependency matters

25 pursuant to A.R.S. § 8-202(B).   The Superior Court has original jurisdiction in

26 proceedings to establish paternity pursuant to A.R.S. § 25-801.

27

28

AZDCS004085

## II.
## Venue

Venue in this county is proper pursuant to A.R.S. §§ 8-206(A) and 25-802 as Maricopa County is the residence of the child and/or the acts of dependency are alleged to have occurred in Maricopa County.

## III.
## Identity of Child, Placement and Applicability of the Indian Child Welfare Act

A.    BROOKE ANGELINA SCIANNA:

    1.    BROOKE ANGELINA SCIANNA is a female child whose date of birth is [REDACTED]

    2.    BROOKE ANGELINA SCIANNA is a dependent child within the provisions of A.R.S. § 8-201(15).

    3.    BROOKE ANGELINA SCIANNA is currently placed with CARE AND DINITY, a group home.

    4.    Upon information and belief, BROOKE ANGELINA SCIANNA is not an Indian child as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4).

## IV.
## Parties

A.    CHRISTINE MARIE WEBSTER

    1.    Upon information and belief, the mother of the child is CHRISTINE MARIE WEBSTER, whose date of birth is May 30, 1972.

2

AZDCS004086

2.     Her address is 15928 West Custer Lane, Surprise, Arizona 85379. Her
       phone number is 623-521-7457.

B.     Upon information and belief, the following male individual is alleged to be the
father of the child who is the subject of this Petition:

1.     ████████████████████████████████████ is the
       father of BROOKE ANGELINA SCIANNA.  His address is ████████
       ████████████████████████████████████████

### V.
### Temporary Custody

Upon information and belief, the child was taken into temporary physical custody
on June 22, 2018 at 1:10 p.m.

### VI.
### Allegations

A.     Upon information and belief, the DCS alleges that the child is dependent due to
abuse or neglect as to CHRISTINE MARIE WEBSTER.

1.     Mother is unwilling or unable to provide proper and effective parental care
       and control by neglecting to provide a safe and stable home environment
       and proper supervision and provide for the child's basic needs.  Brooke is
       diagnosed with an autism spectrum disorder and unspecified voice and
       resonance disorder.  She is low functioning and nonverbal and has
       behavioral episodes.  On or about June 11, 2018, after placing the child in
       an inappropriate choke hold during a behavioral episode, Mother went into
       the house and left the child unattended for about ten minutes while the child

3

wandered in the street. She expected the school's transport staff to supervise the child. Mother frequently could not be reached when the school called her for emergency pickups. Mother stated that she sleeps upstairs on the opposite side of the house from the child and did not hear when the child once answered the door and allowed a stranger into the home. Mother reports that when the child's behaviors escalate, she will frequently hide in the bathroom from the child. There is also concern regarding Mother's mental health as several providers report that Mother's home has been observed as dirty and always kept dark. Mother's behavior is erratic which is not consistent with a calm and stable environment conducive for the child with Brooke's behavioral issues to thrive. Mother blames the school for the child's behavioral issues and states the child does not have the issues in her home; however, the communications between Mother and the school indicate that Mother has the same issues in her home. It was also documented by school staff that Mother and Father were not in agreement regarding the child's medication and that Mother changed the child's medications at least five times within a span of 20 days.

2.   Mother's home is unfit by reason of abuse and failure to protect from abuse. On or about June 11, 2018, Mother and her significant other were observed placing the child, Brooke, in an inappropriate hold to contain her behaviors. They held her against the wall by her neck. It is unknown if the child's breathing was impeded because she is nonverbal and unable to

4

AZDCS004088

communicate this concept.  Brooke had a red mark and scratch on her neck after the incident.

B.    Upon information and belief, the DCS alleges that the child is dependent due to abuse or neglect as to ████████████████

1.    ███████████████████ was married to CHRISTINE MARIE WEBSTER.

2.    ███████████████ has established his paternity of BROOKE ANGELINA SCIANNA by marriage.

3.    ██████████████does have an order granting him custody of BROOKE ANGELINA SCIANNA.

4.    ███████████████does not have a child support order as to BROOKE ANGELINA SCIANNA.

5.    Father is unwilling or unable to provide proper and effective parental care and control by neglecting to provide for the child's basic needs.  Father has failed to provide support for the child, including food, shelter, clothing, proper supervision, and/or medical care.  Brooke is diagnosed with an autism spectrum disorder and unspecified voice and resonance disorder. She is low functioning and nonverbal and has behavioral episodes.  Father did not attend the child's medical appointments or stay up to date on what medications she was on.  Father did not allow the child's DDD supports in his home to work with the child.  Father had concerns about what may be occurring in Mother's home but did not take any actions to protect his child.

5

Father stated he does not have a home that the child can reside in with him at this time.

## VII.
### Facts Supporting Contrary to the Welfare of the Child Finding

Continuation of the child in the home would be contrary to the child's welfare. The finding is supported by the following facts and the above listed allegations, incorporated herein: Brooke is diagnosed with an autism spectrum disorder and unspecified voice and resonance disorder. She is low functioning and nonverbal and has behavioral episodes. On or about June 11, 2018, Mother and her significant other were observed placing the child, Brooke, in an inappropriate hold to contain her behaviors. They held her against the wall by her neck. It is unknown if the child's breathing was impeded because she is nonverbal and unable to communicate this concept. Brooke had a red mark and scratch on her neck after the incident. After placing the child in an inappropriate choke hold during a behavioral episode, Mother went into the house and left the child unattended for about ten minutes while the child wandered in the street. She expected the school's transport staff to supervise the child. Mother frequently could not be reached when the school called her for emergency pickups. Mother stated that she sleeps upstairs on the opposite side of the house from the child and did not hear when the child once answered the door and allowed a stranger into the home. Mother reports that when the child's behaviors escalate, she will frequently hide in the bathroom from the child. There is also concern regarding Mother's mental health as several providers report that Mother's home has been observed as dirty and always kept dark. Mother's behavior is erratic which is not consistent with a calm and stable environment conducive for the

6

child with Brooke's behavioral issues to thrive.  Mother blames the school for the child's behavioral issues and states the child does not have the issues in her home; however, the communications between Mother and the school indicate that Mother has the same issues in her home.   It was also documented by school staff that Mother and Father were not in agreement regarding the child's medication and that Mother changed the child's medications at least five times within a span of 20 days.  Father did not attend the child's medical appointments or stay up to date on what medications she was on.  Father did not allow the child's DDD supports in his home to work with the child.  Father had concerns about what may be occurring in Mother's home but did not take any actions to protect his child.  Father stated he does not have a home that the child can reside in with him at this time.

## VIII.
### Facts Supporting Reasonable Efforts Finding

It is further requested that the Court find, based upon the verified allegations of the petition, that the Petitioner has made reasonable efforts to prevent removal of the child from the home. The finding is supported by the following facts:  A family meeting was held in the Peoria DCS Office on June 18, 2018, with Mother, Father, their significant others, the child's team of providers and DCS in attendance.  It was determined by the team that the level of care needed for the child surpassed what parents and supports were able to provide in order for the child and the people around her to be safe.  The parents disagreed but reluctantly agreed to look into DDD group homes for the child as they wanted to retain their rights to the child.  The next day, Mother changed her mind about

AZDCS004091

seeking services on her own and stated that she would not agree to have the child out of her home and wanted court involvement.

**IX.**
**Facts Supporting Relative or Non-Relative Placement**

The Department has made attempts to identify and assess placement with the child's grandparent or extended family.  Placement of the child with a relative or another member of the child's extended family is not in the child's best interest because Mother and Father were unable to provide DCS with any appropriate kinship placements at this time.  The child has significant mental and/or behavioral health needs and requires a structured environment or higher level of care that the family is not able to provide.  The child's current placement is the least restrictive consistent with the needs of the child.

**X.**
**Financial Responsibility for the**
**Support of the Child**

The parent(s) should pay an appropriate amount as determined by law for the care, maintenance and support of the child while in care pursuant to A.R.S. §§ 8-241, 8-243 and 8-243.01.

**XI.**
**Authority to Consent to Treatment**

As legal custodian of BROOKE ANGELINA SCIANNA and in furtherance of A.R.S. § 8-512 and the DCS's obligation, if any, to provide behavioral health or medical services to a child in the DCS's legal custody, the DCS requests permission to consent to

8

AZDCS004092

necessary medical care and treatment including general anesthesia and surgical procedures.

## XII.
## Education

With regard to possible special education issues of any child named herein who is not placed with a parent, or for any child subsequently removed from a parent(s) physical custody, the DCS hereby requests an order providing that:

1.  In the event a public education agency or Arizona early intervention provider advises DCS that it needs to locate a parent of any child named in this petition to serve as the Individuals With Disabilities Education Act (IDEA) parent for that child and a parent can no longer be located by DCS; or

2.  In the event the parent or legal counsel for the parent tells the public education agency, or DCS/its legal counsel that the parent will not serve as the IDEA parent for the child named in this petition; or

3.  If the parent is subject to a no contact order as to this child; or

4.  If a public education agency or an Arizona early intervention provider following reasonable efforts to try and get a parent to respond to its requests to act as the IDEA parent for a child named in this petition, fails to obtain a response or any cooperation of a parent, an adult relative, stepparent, or foster parent with whom the child lives (but not staff of a group home or other residential facility) shall have authority to serve as the IDEA parent.

AZDCS004093

The IDEA parent represents the child's special education interests under Parts B or C of the IDEA. The purpose of such representation is to ensure that a child with a suspected/known disability receives prompt assessment and evaluation for eligibility for early intervention services or appropriate educational services, which may include special education and related services designed to meet the child's unique needs.

## REQUEST FOR RELIEF

Based upon the foregoing allegations, immediate action is required.

WHEREFORE, the DCS requests this Court find and/or order that:

1.  The Juvenile Court has jurisdiction over the subject matter and, after proper service on the parents and/or guardians, the persons before this Court;

2.  Venue is proper in this county;

3.  Continuation of the child in the home would be contrary to the welfare of the child;

4.  The DCS made reasonable efforts to prevent removal of the child from the home;

5.  The Department made attempts to identify and assess placement with a grandparent or extended family and such a placement is not in the child's best interest at this time;

6.  BROOKE ANGELINA SCIANNA is not an Indian child as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4);

10

AZDCS004094

7.    The child is a temporary ward of the Court, placed in the care, custody and control of the DCS, 3003 North Central Avenue, Phoenix, Arizona 85012, and;

    a.    Placing the child in the physical custody of CARE AND DINITY;

    b.    Authorizing DCS to consent to evaluation and treatment for medical and dental care upon recommendation of a health care provider, including general anesthesia, surgical procedures, blood transfusions, pelvic examinations and testing for the Human Immunodeficiency Virus (HIV); and

    c.    Authorizing DCS and the child's placement to consent to education and social activities on behalf of the child;

8.    A Preliminary Protective Hearing be set pursuant to A.R.S. § 8-824, an Initial Dependency Hearing pursuant to A.R.S. §§ 8-842 and 8-843, a Publication Hearing, and a Permanency Hearing pursuant to A.R.S. § 8-862;

9.    The matter be assigned to the Court-Appointed Special Advocate (CASA) Program to determine if it is appropriate for the assignment of an advocate;

10.   The matter be assigned to the Foster Care Review Board (FCRB) to perform the duties required by statute;

11.   All persons are prohibited from removing the child from the State of Arizona without prior written approval of the DCS;

11

12. Any judgment and orders for the care, paternity, custody, support or such other relief, as the child's welfare and the interests of the State may require under the provisions of Title 8 and Title 25 of the Arizona Revised Statutes;

13. The parent(s) or legal guardian(s) shall provide the DCS Child Safety Worker or its attorney with a recent educational history (including the name(s) and location(s) of the school(s) each child named in the Petition recently attended and the grade in which each child was most recently enrolled.) The parent(s) or legal guardian(s) shall also provide or confirm the date of birth of each child named in the Petition;

14. An individual other than a biological or adoptive parent is authorized to act as the IDEA parent under the circumstances delineated herein;

15. All medical, dental and mental health providers, health plans, Regional Behavioral Health Authorities (RBHAs), as well as other Health Insurance Portability and Accountability Act (HIPAA) covered providers who have provided any services to the child, make available to any guardian ad litem for the child and/or attorney for the child the various medical, dental, mental health, genetic and other health care records of the child;

16. **The parent, guardian or Indian custodian be advised as follows;**

   a. **Failure to appear without good cause may result in a finding that the parent, guardian or Indian custodian has waived his/her legal rights and admitted the allegations in the dependency petition;**

12

AZDCS004096

b.  That hearings may go forward in his/her absence and may result in an adjudication of dependency, permanent guardianship or termination of parental rights based upon the record and evidence presented to the Court, as well as an order of paternity, suspension or termination of an existing current child support order, custody, or change of custody in a consolidated family law matter and an order for child support if paternity has been established;

c.  Proceedings for permanent guardianship pursuant to A.R.S. §§ 8-871 and 8-872 or proceedings for termination of parental rights pursuant to A.R.S. § 8-533 may be initiated based upon the grounds set forth in statute or for failure to participate in reunification services; and

d.  If a child is under three years of age, within six months after removal from the home, the Court will determine whether the parent, guardian or Indian Custodian has substantially neglected or willfully refused to participate in reunification services offered by the DCS; admonish the parent, guardian or Indian Custodian that substantially neglecting or willfully refusing to remedy the circumstances that cause a child to be in an out-of-home placement, including refusing to participate in

13

AZDCS004097

reunification services, is a ground for termination of parental rights; and

17. The parent(s) or legal guardian(s) provide to this Court, as required by A.R.S. § 8-841(D)(5), at the Preliminary Protective Hearing and/or the Initial Dependency Hearing: the names, type of relationship, and all available information necessary to locate persons related to the child or who have a significant relationship with the child. Persons related to the child include the child's grandparents, great-grandparents, brothers or sisters of whole or half-blood, aunts, uncles and first cousins. If the parent(s) or legal guardian(s) do not have sufficient information available to locate a relative or person with a significant relationship with the child, the parent or guardian must inform this Court of this fact. The parent(s) or legal guardian(s) must inform the DCS immediately if the parent(s) or guardian(s) becomes aware of information related to the existence or location of a relative or person with a significant relationship with the child.

18. Notice is given that DCS is proposing to substantiate any allegations of abuse and/or neglect contained in the dependency petition for placement in the DCS Central Registry. The DCS Central Registry is a confidential list of DCS findings that tracks abuse and neglect. If the court finds your child dependent based upon allegations of abuse and/or neglect contained in the dependency petition, you will be placed in the DCS Central Registry. See A.R.S. § 8-804.

14

19.   Notice is given that under the Arizona Rules of Family Law Procedure 5.1(E), during any dependency/guardianship proceeding in the juvenile division, the assigned juvenile division may suspend, modify, or terminate a child support order for current support if the parent entitled to receive the child support no longer has legal or physical custody of the child, and, except in Title IV-D cases may make appropriate orders regarding any past due support or child support arrears.  The assigned juvenile division may direct that the wage assignment be quashed or modified.

RESPECTFULLY SUBMITTED this _____ day of June, 2018.

MARK BRNOVICH
Attorney General

SCOTT A. CHRISTENSEN
Assistant Attorney General

15

AZDCS004099

.

Exhibit 3

CT01200 (5/18)

# REPORT TO THE JUVENILE COURT
## FOR
## PRELIMINARY PROTECTIVE HEARING
## AND/OR
## INITIAL DEPENDENCY HEARING

Court Case Number    JD36034          Date of Report    6/28/18

Case Name      SCIANNA, CHRISTINE    **ID**   511175

A.    Name and Date of Birth for Each Child Subject to This Court Case Number:

    3218497 SCIANNA, BROOKE    DOB 7/14/2001

B.    Child or Children Subject to This Report If Different From Above:

    Not applicable

C.    Family Composition:

    Christine Scianna and John Scianna are the parents to Brooke Scianna.

I.    REASON FOR DCS INVOLVEMENT

    A.    Description of the dangerous condition(s) currently occurring within the family that require Department involvement (include evidence of abuse or neglect); including how the parent, guardian or custodian's behaviors cause the child to be unsafe and, if applicable, why the child(ren) was removed from the parent, guardian or custodian's custody

        On or around 4/20/18 the Department of Child Safety Hotline received a report that stated a Terros crisis team was called out to ACCEL school because Brooke was exhibiting severe self-harming behaviors. She was biting herself, slamming herself into things, and scratching herself, causing multiple bruises and lacerations to herself. Mother stated that she had "almost" called crisis the night prior due to behaviors in her presence. A higher level of care was recommended to Mother. Mother agreed that she would take the child to a hospital after school. Brooke had calmed down and she was transported home on the school bus. Terros Crisis was called to the school again the next day due to the same behaviors. Grandmother was contacted and told the principal that Mother had decided not to take Brooke in the night before because she did not feel well and did not want to sit in the lobby and wait.

        Because of Brooke's excessive amount of self-inflicted injuries the Fire Department was called to the school on 4/20/18 and they transported Brooke to Banner Thunderbird. Father showed up to the hospital. Mother stated that

AZDCS004243

Page 2    Preliminary Protective/ Initial Dependency Hearing

she could not come and Father could handle it.  After Brooke gets medical clearance, the plan is to transfer her to Aurora.

Brooke also has history of being aggressive toward others and was aggressive toward school staff when they tried to intervene today.  Brooke was last hospitalized at the beginning of March and there was "no change" when she returned to school.  Her behaviors have been increasing since the last week of March 2018.  The principal also indicated that Mother did not follow through with medications as prescribed for Brooke as perceived from communication from Mother to the school nurse.  Mother told the nurse that she gave Brooke Magnesium which seemed to help and indicated to not give her valium.  There is also concern that Mother and Father are following different medication regimens in Mother's versus Father's home.

On or around 6/11/18 the Department of Child Safety Hotline received another report that stated Brooke was very aggravated. Brooke was going towards mother and the boyfriend when they put their hands on her. Mother and the boyfriend each put a hand on the front of Brookes neck and pushed her against the wall. Mother and the boyfriend held Brooke against the wall by her neck for a few minutes. It is unknown if Brooke had any difficulty breathing. Later the boyfriend was seen stopping himself from hitting Brooke several times. The boyfriend would start to swing and stop instantly. At one point Brooke stepped on mothers toe and mother went inside bawling. Brooke was left outside wandering out in the street for about 10 minutes before she went back into the yard. Brooke had become upset over a safety vest she is supposed to wear on the ride to school.

Throughout the course of the investigation Mother was not cooperative with the Department. In the beginning of the investigation the Department had to rely mainly on collateral contacts for information. Mother would not answer questions and gave the CM false information to contact Father. When the investigator spoke with the collateral sources on this case there was an increasing amount of concern in regards to the child. There were concerns about the child's medications, cleanliness of her home environment, stable routine and medications.  Concerns were shared of Mother not understanding her child's condition or possibly being in denial as well as Mother being hard to reach, exhausted and injured.  Most collateral contacts described Father as having health issues, non-communitive, not involved in the child's life.

Communications through the school indicated that Mother changed the child's medications 6 times within a 45 day span which alarmed the school nursing staff.  Father and Mother were sending the child to school drowsy and unsure of which medication she had taken and at what times. Mother reported that she noticed the same behaviors at home that were occurring at school.

AZDCS004244

On 6/18/18 the Department held a family meeting in the Peoria office to discuss the future action of the case. Mother, her SO- Daniel Quigley, Father, his SO- Shannon Jones, the child's DDD and behavioral health providers were in attendance. It was determined at this meeting that a higher level of care was needed to ensure the child's safety and the safety of the others around her. Mother was not in agreement. It was discussed with Mother that there were not enough services and providers were too unreliable to depend upon. Mother was not happy with the outcome but agreed that she would find a DDD group home within 2 weeks or the Department would take further action.

On 6/21/18 a family meeting was held with providers, parents and DCS at Embrace Life group home. The team met to discuss the transition and transportation of the child Brooke Scianna into a group home. Mother's demeanor and attitude was unpleasant, resistant and aggressive towards the idea. Mother states that she was only even looking at the home and present today because she was forced to. DDD informed Mother that this was the only home available to take the child. This CM spoke with Mother about how the Department's level of concerns about Brooke in her home have risen due to new information about other children in the home and Mother's continued uncooperative behaviors. CM explained how the Department will be taking custody but would like to facilitate an easy transition to the group home for the child's sake. CM expressed concerns that Mother's behaviors are escalating and could be impacting the child. Daniel then became verbally aggressive towards Father and CM. Daniel told this CM to call police if she did not like it. Mother was supportive of Daniel's aggressive behaviors. CM was able to get Daniel to remove himself from the meeting due to his aggressive nature and disruptive behavior that was taking away from the progression of the meeting. It was agreed upon that Mother would bring the child to the group home to have dinner and introduce her to staff and show her room so the child would feel more comfortable to stay at the facility the next day.

On 6/22/18 Mother did not show up for the transition dinner with the child the night before and told her Family Support Partner that she would not release the child to DCS. CM went the family home with the group home staff and Surprise police to pick up the child. Mother refused to allow the child to leave and argued with officers through the door for around 2 hours. Officers contacted Mother's attorney and she agreed to release the child if a crisis team was called. Police called a crisis team and they arrived and went in the home. The crisis team came out and stated that Mother was getting the child's belongings together. Crisis also noted that Mother did not seem sure as to what medication the child took or which medication was the correct one to send and she had to ask for help which they found concerning. Crisis came out of the home with one small plastic bag and said Mother refused to give the child anything but one change of clothes as she said she "not trying to cooperate with DCS." The child walked out of the home without issue, entered the group home van and left.

AZDCS004245

**B.     Parent/guardian/custodian's verbal or written response to the allegations**

Mother, Christine Scianna

Mother was very uncooperative with the investigation process.  Mother attended the Family Meeting at the Peoria Office on 6/18/18 where she stated that she had tried many different medications with Brooke. Brooke has episodes that go on for hours at a time. Christine stated that Brooke caused injuries to her; she dislocated her jaw, broke her toe, scratched her and has bitten her. Mother stated that sometimes she just hides in the bathroom from Brooke when she is having episodes. She stated that when Brooke becomes upset, she gets violent. She stated that crisis is there all the time. She stated that crisis there a lot due to Brook's violent behavior. She stated that she has had 3 hospitalizations recently.

Christine said that she has tried everything. She said that communication with the father, the school and the rest of the team is an issue. She stated that she and the father try to work together. She stated that they seem to work better together when Brooke is in the hospital. She stated she got a medical marijuana card and gave her medical marijuana, which worked for a while. She stated that she ran into problems as the father was in disagreement. She stated that the police also became involved and the police officer told her that if she sent the medical marijuana to the father to give to Brooke when she was at his house, she could be arrested for distribution. The father couldn't get a card as he had a disqualification that prevented him from getting a card. She stated that it also came to the fact that she could no longer afford the marijuana as it is not covered under insurance and could not afford a medical marijuana card. She stated that there were issues with getting child support which also made it difficult to afford the marijuana. She stated that is why they went back to psychiatric medication for Brooke. She stated that Brooke also became tolerant of the marijuana and it was not working as well anymore. Christine stated that there was an incident where one of the caregivers couldn't get into house. The police were called because Brooke had a meltdown. She stated that she was called and had to come home and let them in the house. The next day Brooke had an escalation about the dog. Christine stated that she was worried that Brooke was hurting or would hurt the dog, so she put the dog in the bathroom which triggered Brooke and Brooke attacked her. She called one of the agencies that works with Brooke, the Stars group and they told her to call 911. Brooke locked her out of the house. Brooke was then taken to the hospital.

Christine stated that Brooke has had problems at school. They did not know what was escalating her at school. She stated that she responds to the calls

AZDCS004246

Page 5    Preliminary Protective/ Initial Dependency Hearing

from the school about Brooke as best as she can, but it is difficult when she is a teacher herself. She stated that it is not easy for her to get away from her classroom. She stated that she often has to leave work to go get Brooke. She stated that sometimes they are in the middle of science experiments and she cannot abruptly leave or receive phone calls. She stated that one time the principal had to come and get her about an emergency with Brooke. She stated that she has used up all of her paid time off from handling things with Brooke. She stated that if she takes off of work, it is unpaid. She stated that there was an issue one when she was downtown for the teacher walk out. She stated that sometimes she has to attend CFT's by phone during her lunch and she only has 30-40 minutes. She also uses her prep time to take care of things with Brooke. Christine stated that she answers all of the calls and emails and she works with the school on ideas with handling Brooke.

Father, John Scianna

Father states that "whatever medications" are given to him is what he gives the child when she visits him. He gives exactly what it says to do on the bottle. He says that often Mother drops the child off and has "forgotten" to pack her medications. He states that whatever Mother sends for her is what he gives her. He states that Mother had kept the child from him for about 4 months by switching weekends and changing things around. Father says he received a message from Mother saying that she was taking the child off her medical marijuana and that was when the child began having behaviors. He states that for a while Mother was not even giving her any medications. He was not sure what she was taking. Father states that he knows that detaining Brook can be difficult. He states that he does not think that holding Brooke by the neck is appropriate. He states that he has never seen any kind of behavior like this but he avoids Mother at all costs and they do not communicate at all. He states that leaving Brooke out in the front yard for ten minutes is "not ok". He says that Mother told him that Brooke damaged the neighbors car which means that is was done when Brooke was left outside alone. He says that Mother only gave him half the story. He says that he has only met Mother's SO twice and they do not really like each other. Father states that he and SO had issues over his adult daughter who was residing with him did not like SO.

Father attended the family meeting at the Peoria office on 6/18/18 and stated that Brooke needs to be on a medication that will work. He stated that nothing is going to fix it. He stated that they have to take her to the doctor every time they even have to up her medication by one milligram. It is hard to get her to the doctor all the time. He stated that it is hard to get Brooke to go to and sit in the doctor's office because she doesn't like to wait. Father stated that Brooke is not on the medical marijuana anymore. Brooke became tolerant to it and it no longer worked. He does not know what goes on at her mother's house. He

AZDCS004247

does not know what the triggers are over there. He knows that Brooke flips out over anything. The father is concerned about her self-harming injuries.

**C.    Family history of involvement with the Department or other child welfare agencies**

Prior History
9/29/15 Unsubstantiated
The mother leaves ▮▮▮ at home to watch Brooke who is autistic and combative. The mother leaves ▮▮▮ alone with Brooke during the week average of two days per week and for about 2-3 hours at a time. The mother leaves ▮▮▮ with Brooke on weekends from 4-6 hours. ▮▮▮ has gotten bruises in the past from Brooke being combative. ▮▮▮ is hit by Brooke on average of once a week due to her condition. The last bruise ▮▮▮ got was on her right leg but no details given as to color or size.

▮▮▮ appears clean, healthy and appropriately dressed; it is unknown what Brooke's current condition. ▮▮▮ does not have any mental health or medical conditions. Brooke is autistic and only takes birth control pills to control her periods because she can't deal with them in her condition. Brooke has anger issues and is non-verbal. The mother does not have any diagnosis however she is believed to be bi-polar. The mother drinks and when she drinks she is very angry.

On Saturday night ▮▮▮ arrived home from hanging out with friends at about 10:07 PM and mother came to the door with see through lingerie and you could see that she was totally naked. The mother was there with her boyfriend and told ▮▮▮ to go to her room and not come out because they were going to be having sex down stairs. As ▮▮▮ was going up the stairs she could see all of mother's sex toy's (Dill'doo's and Vibrator's) laying around. ▮▮▮ got very upset and called her dad and told him she was going to pack her bags and go stay at her friend's house as ▮▮▮ friends mother was going to come pick her up. The father told ▮▮▮ 'No" that he would come pick her up instead. ▮▮▮ told dad she did not want father to come over because she thought father would get into fight with mother's boyfriend. The father talked ▮▮▮ into just going to bed.

On Sunday ▮▮▮ still wanted to be picked up so father came and picked her up. The mother sent text to father and ▮▮▮ stating "good that ▮▮▮ had left and mother stated she was going to change the locks and will be moving out of state".

Today, 09/29/2015 father got a call that police were called due to father having ▮▮▮ outside of the court order visitation dates. The father is concerned that ▮▮▮ will be forced to go back to mother's house and mother

will retaliate against ███. The father was accused of kidnapping ███ from mother's house.

### 7/19/2016  Unsubstantiated

Mother sent an email that she continues to be attacked for a thirty minute period by Brooke. Mother stated that Brooke has ripped Mother's hair out. This seems to be an on-going issue. Mother will report being attacked by Brooke about two times a week. Mother wrote that she had locked herself in the bathroom, details unknown. It is unknown if SO other was in the home with the children. It has been stated that SO has had to "restrain" Brooke before. Mother appears to be a target for Brooke. Mother is working with direct service workers in the home for about twenty-five hours a week, but it does not seem to be enough. There is a concern that the other children in the home could be affected by Brooke's behavior.

About a week or two ago, Brooke was hospitalized at Phoenix Children's Hospital. Mother was visiting Brooke, and Mother was attacked to the point where her jaw may have been dislocated.

In February 2016 and March 2016, Brooke was seen expressing self-harming behavior. Brooke would smash her head and bang her head against the wall.

Brooke is highly aggressive, has low functioning autism/spectrum disorder, and unspecified communication disorder. Brooke's level of verbal communication is very low. Brooke takes Metformin, Clonopin, Seroquel, and Valium. Brooke has been in and out of St. Luke's behavioral health hospital. It has been difficult stabilizing Brooke's medication. Brooke receives DDD services, and her worker is Richard Finpery. Mother appears to be participating in services, but she is still unable to manage Brooke's behaviors with the services she has in place.

### 6/1/2017  Unsubstantiated

Visitation was recently restored and Brooke spent her first weekend with father in several months on 07/28/17 through 7/30/17. Brooke is autistic, non-verbal and has extreme behaviors including being very aggressive. After Brooke's first visit with father in many months, her behaviors were exacerbated. When Brooke came home on Monday evening, she was being very aggressive. She would not settle down and would not go to sleep, she was up until after 2 a.m. Brooke would not leave mother's room and spent the night pacing in mother's room and screaming.

Mother went to work on 08/01/17, and Brooke was left with her two caregivers from the STARS program, both of them were concerned by the level of aggression Brooke was exhibiting. There are concerns that Brooke is

responding to being with the father.  Father has a history of being aggressive.  Father believes in being physical with Brooke to control her behaviors.  Father has been observed in the past to restrain Brooke.  Once he was seen pressing her face into a couch cushion, trying to control her.  Father also makes Brooke sleep in the same bed with him.  Father states that Brooke "likes to cuddle."  However, Brooke is autistic and normally does not like to be touched at all.

Father reported that he took Brooke to a doctor over the weekend, but refuses to tell mother why she went to the doctor or what doctor she saw.  Similarly, father will not allow Brooke's normal caregivers to go to his house, because "he can handle it."  Brooke has been on marijuana oil for several years, which seems to help her condition.  Brooke has to do without this medication when she is at father's home, because it is illegal for mother to send it with Brooke to father's home, because he does not have a medical marijuana card, and refuses to get one because he would no longer be allowed to buy firearms.

Father has a history of alcohol abuse and having a violent temper.  Father used to punch holes in walls and throw and break things in the home when the family was still together.  Mother has had protective orders against father in the past.  It is believed that father's aggressive way of handling Brooke's behaviors are the cause of her exacerbated behaviors.

D.  **Services and supports provided to the family to prevent removal and outcomes of services and supports**

The parents had a Family meeting in the Peoria office on 6/18/18 at 9 am with the child's providers in attendance.  It was determined at the meeting that the level of care in home with mother was not meeting the highly behavioral needs of the child.  On 6/22/18 another meeting took place at Embrace Life Group Home to coordinate the transition of Brooke's care.  Mother was not willing to place the child in the only group home DDD had available for the child's placement.

E.  **If the family has Native American heritage, efforts to identify and contact the child's tribe and confirm the child's membership status**

ICWA does not apply to this case.

II.  **SAFETY PLANNING**

A.  **If applicable, efforts to locate each missing parent**

Parents whereabouts are known.

B.   Description of the current safety plan, including the location and living arrangement of the child, the actions that are necessary to control the dangerous condition(s), when those actions and/or services are needed, and the adults responsible for carrying out the actions

See attached Safety Plan

C.   Efforts to implement the least intrusive plan that is sufficient to control the dangerous conditions; and for Indian children, the active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and the outcome(s) of these efforts

The Department held two family meetings on 6/18/18 & 6/21/18, and TDM on 6/27/18 where it was determined that even with all the behavioral and special needs supports in place it was not enough to control the safety factors in the home and ensure the safety of the child.

D.   The conditions for return as described in the safety plan (only applicable if the child is not residing with a parent or guardian and is assessed as unsafe due to impending danger)

See attached Safety Plan.

E.   Describe why continued temporary custody is necessary

Continued temporary custody is necessary due to Mother's inability to appropriately follow doctors medication orders,  placing the child in inappropriate behavioral holds, lack of understanding the child's special needs, inability to provide a stable and calm home environment and inability to control the child's behaviors. Father has physical health issues, is unable to provide a stable home environment, lacks understanding of caring for a special needs child, and an inability to control the child's behaviors.

III.   IDENTIFICATION, LOCATION, AND ENGAGEMENT OF EXTENDED FAMILY MEMBERS OR OTHER CONNECTIONS

A.   Results of efforts to identify, locate, contact, and engage adult relatives of the child, including grandparents, great-grandparents, adult siblings, parents, or step-parents who have custody of any siblings, aunts, uncles and first cousins, and persons who have a significant relationship with the child. Include information, if known, about the person's willingness to be a potential placement

No efforts were made to identify relatives due to the child's special needs and behaviors. The child needed a higher level of care than relatives could provide and the Department and the Division of Developmental Disabilities worked

AZDCS004251

together to find her an appropriate placement willing and able to meet her high level of needs.

**B.** **Description of the child's important connections, including information provided by the child, parents, and/or guardians**

The child has a team of supports that work with her. She has services through Arizona's Children's Association including a High Needs Case Manager, Cassandra Tisdale, and Family Support Partner, Patrice Munday. She has CFSS-FACT behavioral coaching team, Lead- Elisa Vincitorio, DDD Support Coordinator- Elecia Hart and ACCEL special needs teacher Ixayana Vera.

**C.** **Contact between the child and the child's relatives, friends, former foster parents and any connections the child identifies; and if contact is restricted, the reasons why**

The child has all her current providers and supports in place in her placement.

**D.** **Efforts to maintain cultural connections, including opportunities for the child to build cultural awareness and involvement**

The child has all her providers and familiar supports in place in the group home and is attending her school where she has established connections and involvement to maintain her familiar routine.

**IV.** **CHILD'S FUNCTIONING, SERVICES, AND LIVING ARRANGEMENT**

**A.** **Physical, developmental, and behavioral health needs assessment and services, including coordination of services with the RBHA**

Physically Brooke appears on target for a 16 year old girl. Developmentally Brooke is delayed due to her diagnosis of Autism and Unspecified Voice and Reconosis Disorder. Brooke receives speech therapy and has an Augmentative Device.

Brooke has a lot of behavioral health needs and already has services in place through Arizona's Children's Association and CSFF-FACT. The child has a support team of a High Needs Case Manager, Family Support Partner, and Behavioral Coaches.

**B.** **Education and social development needs assessment and services, including efforts to ensure educational stability**

Brooke attends a special needs school called ACCEL with an Individualized Education Plan in place. Brooke struggles socially due her OCD disorder and often has to be separated from her classmates because she disrupts the class.

AZDCS004252

C. **For youth age fourteen or older in out-of-home care, efforts or plans to assess and provide services to support the youth's preparation for Adulthood**

The child is qualified for the Division of Developmental Disabilities programs and DDD supports qualifying candidates through adulthood.

D. **Description of the type of living arrangement and whether it is consistent with the Department's placement preferences; if the child is not living in the home of a grandparent, other relative, or person who has a significant relationship with the child, the reasons why such placement has not been identified or is contrary to the child's best interest**

Placement with relatives was not in the child's best interest as she has high needs that demand a level of care that requires specially trained staff to ensure the child's safety and the safety of others around her.

E. **Description of any assistance or services provided to the caregiver(s) to enhance their capacity to provide appropriate care and supervision**

The caregivers will receive standard allowances, school transportation, Arizona Long Term Care, Mercy Maricopa Medical Plan and any additional supports and services that are authorized by the Division of Developmental Disabilities.

F. **If the child has a sibling in out-of-home placement, description of efforts made to place siblings together; and if not placed together, the specific reasons why placement did not occur or reasons why this would be contrary to the child's or a sibling's safety or well-being**

Not applicable.

G. **If placement with sibling(s) is not possible, efforts to facilitate frequent visitation or contact with siblings; and if frequent visitation or contact with siblings is not recommended, the reasons why this would be contrary to the child's or sibling's safety or well-being**

Not applicable.

H. **Efforts to provide an Indian child with an appropriate living arrangement in accordance with ICWA guidelines**

ICWA does not apply to this case.

I.   If out-of-state placement is appropriate and in the best interest of the child, state why (include ICPC and/or out-of-state visitation status)

Not applicable.

V.   PARENT FUNCTIONING, ADDITIONAL ASSESSMENT, AND INITIAL SERVICES

A.   Description of each parent's, guardian's, or custodian's protective capacities

Mother,  Christine
Mother has a diminished capacity behaviorally of an inability to control impulses, not taking action, setting aside her own needs for the child and protecting her child.  Cognitively Mother does not recognize threats, understand her protective role or her child's needs.

Mother's behavioral strengths include being adaptive and assertive and having adequate skills as a caregiver.  Cognitive strengths includes that Mother is intellectually able to parent and she is self-aware as a parent.  Mother's capacity emotionally for the child has no limitations as Mother is fully functional in this area.

Father, John Scianna
Father has a diminished capacity behaviorally of not taking action and setting aside his own needs for his child. Cognitively Father does not recognize threats or understand his child's needs.

Father's behavioral strengths include an ability to control impulses, being adaptive and assertive, and having adequate skills as a caregiver.  Cognitive strengths includes an intellectually ability to parent and he is self-aware as a parent.  Father has no limitations in emotional capacity to care for the child.

B.   Description of assessments, services, and/or supports provided or offered to each parent, guardian, or custodian since the child's removal to remedy the need for temporary custody (including date of evaluations scheduled or completed) and proposed case plan services

No services could be provided that would rectify the need for temporary custody.  Father is offered Parenting Aide services, transportation as needed, and Autism education classes within the community.  Mother is offered Parenting Aide services, transportation as needed, Psychiatric evaluation and Autism education classes within the community.

C.   Services or supports requested by, or on behalf of a parent or guardian, and if not provided, the reasons why

Mother requested a formal Team Decision Making Meeting and received the meeting on 6/27/18 in the Peoria office. No other services were requested by the parents.

**VI. PROPOSED PERMANENCY/CASE PLAN GOAL AND PARENTING TIME (VISITATION) PLAN**

**A. Proposed case plan goal and target date**

Reunification with a target date of 7/1/2019.

**B. Proposed concurrent case plan goal and target date, if applicable**

There is no concurrent case plan at this time.

**C. Current or proposed plan for parenting time (visitation) between the child and each of their parents, guardians or custodians**

Mother and Father will have separate supervised visitation times at 1 hour 1 time a week. Additional Safety Monitors can be approved by the Department but are limited to available times set by providers and group home staff. This requirement is due to the child's behaviors and 1:1 staffing requirements to ensure the child's safety and the safety of others in the community.

**D. Describe the results of any visitation that has occurred between the child and a parent, guardian, or custodian since removal**

The parents were offered standard supervised visitation on 6/29/18.

**VII. DCS SPECIALIST'S CONCLUSIONS**

It is the opinion of the Department that the child remain in the legal custody of the Department and the physical custody of the DCS approved DDD licensed group home. The DDD group home care givers are trained and able to meet the needs of a highly behavioral non-verbal autistic child. The Department has serious concerns regarding Mother's inability to provide a calm and stable environment, her ability to handle the child's medications and follow the doctor's medication orders. The Department also has serious concerns about how Mother inappropriately handles the child when she is demonstrating behaviors. The Department has concerns about Father's physical health, his ability to provide stable housing, and his ability to fully participate in the child's health care and behavioral management needs. Services are being put into place to address these issues. Once parents has successfully completed the recommendations

AZDCS004255

made, the Department can better determine if the parents can effectively and appropriately care for the child with such a high level of special needs.

## VIII.   RECOMMENDATIONS:

### A.   Agency

It is respectfully recommended that <u>Brooke Scianna</u> be made a ward(s) of the court, committed to the care, custody, and control of the Arizona Department of Child Safety.

It is further respectfully recommended that <u>Brooke Scianna</u> be placed in the physical custody of <u>DDD Group Home</u> with appropriate medical, social, and educational authorizations.

If the child is in out-of-state placement, it is further respectfully recommended that the court find that the out-of-state placement continues to be appropriate and in the best interest of the child.

### B.   Financial:

It is respectfully recommended that beginning (date) <u>6/28/18</u>, the parents listed below be assessed the following amounts on a monthly basis per child as the contribution towards the cost of foster care:

(parent name) <u>Christine Scianna</u> be assessed $ <u>50.00</u> monthly for each of the following children:  Brooke Scianna

(parent name) <u>John Scianna</u> be assessed $ <u>50.00</u> monthly for each of the following children:  Brooke Scianna

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

### C.   Reasonable Efforts Findings

It is respectfully recommended that the court find that the Arizona Department of Child Safety has made reasonable efforts to prevent or eliminate the need for removal and to make it possible for the child to safely return home.

If the child is an Indian child, it is further respectfully recommended that the court find that Arizona Department of Child Safety has made

Preliminary Protective/ Initial Dependency Hearing

designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

If the child is an Indian child, it is further respectfully recommended that the court find that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

It is further respectfully recommended that the court approve the proposed case plan.

Respectfully submitted:

Name/Title    Tina Canale   Investigations
ARIZONA DEPARTMENT OF CHILD SAFETY
Telephone Number:    602-397-7592
Date:    6/28/18

Approved by:

Name/Title    Christi Johnson
ARIZONA DEPARTMENT OF CHILD SAFETY
Telephone Number:    602-771-0213
Date:    6/28/18

Case Name:    SCIANNA, CHRISTINE            ID:    511175

Exhibit 4

CHRIS DEROSE, CLERK
BY  *C. Camacho*  DEP
C. CAMACHO, FILED

18  JUN 28  AM 9: 52

MARK BRNOVICH
Attorney General

SCOTT A. CHRISTENSEN
Assistant Attorney General
State Bar No. 024676
CFP/PSS
2005 North Central Avenue, C007AG
Phoenix, Arizona 85004
(602) 542-1645
PSSDurango@azag.gov

Attorneys for the Department of Child Safety

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| In the matter of: | No. JD36034 |
|---|---|
| BROOKE ANGELINA SCIANNA<br>d.o.b. 07/14/2001 | **ORDER SETTING HEARINGS ON DEPENDENCY PETITION AND TEMPORARY ORDERS** |
| Person(s) under 18 years of age. | (Honorable _____) |

Upon a verified petition alleging the child to be dependent and that the interests of

the child requires immediate action:

IT IS ORDERED setting a Preliminary Protective Conference for the *2* day of

*July*, 20*18*, at *9:30a*.m., to be held at Maricopa County Superior Court,

*X* 3131 West Durango, Phoenix, Arizona 85009 OR~~ 125 West Washington~~

~~Street, Phoenix, Arizona 85003,~~ before the Facilitator _____.

IT IS FURTHER ORDERED setting a Preliminary Protective Hearing for the *2*

day of *July*, 20*18*, at *10:15a*.m., to be held at Maricopa County Superior

Court, *X* 3131 West Durango, Phoenix, Arizona 85009 OR~~ 125 West~~

AZDCS004104

~~Washington   Street,   Phoenix,   Arizona   85003,~~   before   the   Honorable

_Hoskins_.

IT IS FURTHER ORDERED setting an Initial Dependency Hearing for 2 day of

_July_, 20 18, at _10:15_ a.m., to be held at Maricopa County Superior Court,

X 3131 West Durango, Phoenix, Arizona 85009 ~~OR        125 West Washington~~

~~Street, Phoenix, Arizona 85003,~~ before the Honorable _Hoskins_.

IT IS FURTHER ORDERED setting a Publication Hearing for the ___ day of

_____, 20___, at ____ __.m., to be held at Maricopa County Superior Court,

____ 3131 West Durango, Phoenix, Arizona 85009 OR ____ 125 West Washington

Street, Phoenix, Arizona 85003, before the Honorable _____.

IT IS FURTHER ORDERED setting a Permanency Hearing for 22 day of

_May_, 20 19, at _9:30_ a.m., to be held at Maricopa County Superior Court,

X 3131 West Durango, Phoenix, Arizona 85009 ~~OR        125 West Washington~~

Street, Phoenix, Arizona 85003, before the Honorable _Hoskins_.

IT IS ORDERED that, pending the hearing, BROOKE ANGELINA SCIANNA is made a temporary ward of the Court, committed to the legal care, custody and control of the Department of Child Safety (DCS or the Department) and placed in the physical custody of CARE AND DINITY.

IT IS FURTHER ORDERED that, pursuant to Rule 3, R.P.J.C., this matter be referred to the CASA Program Coordinator to determine the appropriateness of an appointment of an advocate for the child.

2

AZDCS004105

IT IS FURTHER ORDERED that no person shall remove or cause the removal of the child from the State of Arizona without prior written approval of DCS.

IT IS FURTHER ORDERED that DCS is authorized to consent for the child to leave the jurisdiction of the Court for travel within the United States for a period not to exceed thirty days.

IT IS FURTHER ORDERED that the parent(s) or legal guardian(s) provide the DCS child safety worker or its attorney with a recent educational history (including the name(s) and location(s) of the school(s) the child named in the Petition recently attended and the grade in which the child was most recently enrolled). The parent(s) or legal guardian(s) shall also provide or confirm the date of birth of the child named in the Petition.

IT IS FURTHER ORDERED that in the event of any of the following circumstances, a relative, stepparent or foster parent with whom the child lives (but not staff of a group home or other residential facility) shall have authority to act as the IDEA parent:

1.   Neither the public education agency, an early intervention provider or DCS can locate the parent;

2.   The parent or legal counsel for the parent tells the public education agency, DCS or one of its attorneys that the parent will not act as the IDEA parent;

3.   There is a no contact order against the parent as to the child in issue; or

4.   The public education agency or Arizona early intervention provider has made reasonable attempts to get a parent to respond to its requests to act as

3

AZDCS004106

the IDEA parent and fails to obtain a response or any cooperation from the parent.

IT IS FURTHER ORDERED that any Regional Behavioral Health Authority (RBHA), health plan, medical, dental or mental health provider/professional, hospital, clinic, laboratory, pharmacy, medical facility or other health care provider that has provided or is providing treatment or services to BROOKE ANGELINA SCIANNA shall, upon written request, provide the child's guardian ad litem and/or the child's attorney with copies of paper and electronic medical, health, dental, mental health, genetic test, communicable disease (including HIV-related information) records of this child in DCS's legal custody.   The records may be provided in any medium that is acceptable to the entity or individual providing the records.   RBHAs are to provide the child's guardian ad litem and/or the child's attorney with the names of any service providers for the child.   All individuals and entities covered by this Order are also permitted to speak with the child's guardian ad litem and/or the child's attorney.   The child's guardian ad litem and/or child's attorney shall not request records as to this child after the period of representation in this matter ends.

IT IS FURTHER ORDERED that the parent(s) or legal guardian(s) provide to this Court, at the Preliminary Protective Hearing and/or the Initial Dependency Hearing:   the names, type of relationship, and all available information necessary to locate persons related to the child or who have a significant relationship with the child.   Persons related to the child include the child's grandparents, great-grandparents, brothers or sisters of whole or half-blood, aunts, uncles and first cousins. If the parent(s) or legal guardian(s)

4

do not have sufficient information available to locate a relative or person with a significant relationship with the child, the parent or guardian must inform this Court of this fact.   The parent(s) or legal guardian(s) must inform the DCS immediately if the parent(s) or guardian(s) becomes aware of information related to the existence or location of a relative or person with a significant relationship with the child.

**FAILURE TO COMPLY WITH THESE ORDERS MAY RESULT
IN THE COURT FINDING YOU IN CONTEMPT OF COURT**

IT IS FURTHER ORDERED placing BROOKE ANGELINA SCIANNA in the temporary physical custody of CARE AND DINITY and that CARE AND DINITY is authorized to consent to social and authorized educational activities for the child.

IT IS FURTHER ORDERED that in furtherance of A.R.S. § 8-512 and the DCS's obligation, if any, to provide medical, behavioral health or other services to child in the DCS's legal custody, the DCS is authorized to consent to evaluation and treatment for medical and dental care upon recommendation of a health care provider, including general anesthesia, surgical procedures, blood transfusions, pelvic examinations and testing for the Human Immunodeficiency Virus (HIV).

IT IS FURTHER ORDERED that DCS and the placement shall have authority to consent to all social and authorized educational activities for BROOKE ANGELINA SCIANNA.

THE COURT FINDS, based upon the verified allegations of the Petition that continuation of the child in the home would be contrary to the welfare of the child.  This finding is supported by the following facts: Brooke is diagnosed with an autism spectrum disorder and unspecified voice and resonance disorder.  She is low functioning and

5

nonverbal and has behavioral episodes. On or about June 11, 2018, Mother and her significant other were observed placing the child, Brooke, in an inappropriate hold to contain her behaviors. They held her against the wall by her neck. It is unknown if the child's breathing was impeded because she is nonverbal and unable to communicate this concept. Brooke had a red mark and scratch on her neck after the incident. After placing the child in an inappropriate choke hold during a behavioral episode, Mother went into the house and left the child unattended for about ten minutes while the child wandered in the street. She expected the school's transport staff to supervise the child. Mother frequently could not be reached when the school called her for emergency pickups. Mother stated that she sleeps upstairs on the opposite side of the house from the child and did not hear when the child once answered the door and allowed a stranger into the home. Mother reports that when the child's behaviors escalate, she will frequently hide in the bathroom from the child. There is also concern regarding Mother's mental health as several providers report that Mother's home has been observed as dirty and always kept dark. Mother's behavior is erratic which is not consistent with a calm and stable environment conducive for the child with Brooke's behavioral issues to thrive. Mother blames the school for the child's behavioral issues and states the child does not have the issues in her home; however, the communications between Mother and the school indicate that Mother has the same issues in her home. It was also documented by school staff that Mother and Father were not in agreement regarding the child's medication and that Mother changed the child's medications at least five times within a span of 20 days. Father did not attend the child's medical appointments or stay up to date on what

6

medications she was on. Father did not allow the child's DDD supports in his home to work with the child. Father had concerns about what may be occurring in Mother's home but did not take any actions to protect his child. Father stated he does not have a home that the child can reside in with him at this time.

THE COURT FURTHER FINDS, based upon the verified allegations of the Petition, that the Petitioner has made reasonable efforts to prevent removal of the child from the home. This finding is supported by the following facts: A family meeting was held in the Peoria DCS Office on June 18, 2018, with Mother, Father, and their significant others, the child's team of providers and DCS in attendance. It was determined by the team that the level of care needed for the child surpassed what parents and supports were able to provide in order for the child and the people around her to be safe. The parents disagreed but reluctantly agreed to look into DDD group homes for the child as they wanted to retain their rights to the child. The next day, Mother changed her mind about seeking services on her own and stated that she would not agree to have the child out of her home and wanted court involvement.

THE COURT FURTHER FINDS, based upon the verified allegations of the Petition that the Department made attempts to identify and assess placement with a grandparent or extended family and it is not in the child's best interest because Mother and Father were unable to provide DCS with any appropriate kinship placements at this time. The child has significant mental and/or behavioral health needs and requires a structured environment or higher level of care that the family is not able to provide. The child's current placement is the least restrictive consistent with the needs of the child.

7

AZDCS004110

You are hereby advised that your failure to appear without good cause may result in a finding that you waived your legal rights and have admitted the allegations in the Petition.  In addition, if you fail to appear without good cause, the hearings may go forward in your absence and may result in an adjudication of dependency, termination of your parental rights or the establishment of a permanent guardianship based upon the record and evidence presented to the Court, as well as an order of paternity, suspension or termination of an existing current child support order, custody, or change of custody in a consolidated family law matter and an order for child support if paternity has been established.    You are also advised that if a child is under three years of age, within six months after removal from the home, the Court will determine whether you have substantially neglected or willfully refused to participate in reunification services offered by the DCS.  In addition, you are hereby advised that substantially neglecting or willfully refusing to remedy the circumstances that cause your child to be in an out-of-home placement, including refusing to participate in reunification services, is a ground for termination of parental rights.

## APPOINTMENT OF COUNSEL – CHILD

☑     IT IS FURTHER ORDERED appointing _Tom Stubbs_, as

☑ Guardian ad Litem for the child; and appointing _____,

as ☐ counsel for the child.

///

///

8

AZDCS004111

## APPOINTMENT OF COUNSEL – OTHER PARTIES

1    ☑   IT IS FURTHER ORDERED assigning _Cynthia Ceasar_ , as

2

3 counsel for <u>CHRISTINE MARIE WEBSTER</u> pending the decision of the Court at the

hearing. The determination of appointment of counsel may require the completion of a

4

5 financial affidavit.

6    ☑   IT IS FURTHER ORDERED assigning _Sara Smith_ , as

7

8 counsel for <u>JOHN RALPH SCIANNA</u> pending the decision of the Court at the hearing.

The determination of appointment of counsel may require the completion of a financial

9

10 affidavit.

11    DATED this _27th_ day of _June_ 2018.

12

13

14

17               JUDGE OF THE SUPERIOR COURT

17                 Commissioner Melody Harmon

17

18

19

20

21

22

23

24

25

26

27

28

9

AZDCS004112

Exhibit 5

☐ **C2C**

FILED
7/27/2018 10:52am
CHRIS DEROSE, Clerk
By: _A. Villasino_
Deputy

FOR CLERK'S USE ONLY

### SUPERIOR COURT OF ARIZONA
### IN MARICOPA COUNTY

PETITIONER: ☒ DCS    ☐ GAL    ☐ Other

| In the Matter of: | |
|---|---|
| Name | Date of Birth |
| Brooke Angelina Scianna | 7/14/01 |

Person(s) under 18 years of age

Case No. **JD36034**

**PRELIMINARY PROTECTIVE ORDER AND ORDER SETTING COURT HEARINGS**

Commissioner Hoskins
Judge/Commissioner

### APPEARANCES
Per the attached sign in sheet
### ORDERS
The Court has considered the stipulation of the parties and/or evidence presented and ORDERS AS FOLLOWS:

A. **ICWA** The Court finds, based upon the assertions of the parties, that the Indian Child Welfare Act (ICWA)
☐ DOES apply   ☒ DOES NOT apply   ☐ MAY apply, though it has yet to be determined

B. **APPOINTMENT OF COUNSEL**

| Party | Party Name | Attorney Name | | Appointed |
|---|---|---|---|---|
| MOTHER | Christine Marie Webster | DeAnn Gillespie | , Atty | ☒ Yes ☐ No |
| | | | ,GAL | ☐ Yes ☐ No |
| FATHER | | Sara Smith (OPDS) | ,Atty | ☒ Yes ☐ No |
| | | | ,GAL | ☐ Yes ☐ No |
| FATHER | | | ,Atty | ☐ Yes ☐ No |
| | | | ,GAL | ☐ Yes ☐ No |
| FATHER | | | ,Atty | ☐ Yes ☐ No |
| | | | ,GAL | ☐ Yes ☐ No |
| CHILD(REN) | Brooke Angelina Scianna | Thomas Stubbs (OLA) | ,GAL | ☒ Yes ☐ No |
| CHILD(REN) | | | ,GAL | ☐ Yes ☐ No |
| CHILD(REN) | | | , | ☐ Yes ☐ No |
| OTHER | | | , | ☐ Yes ☐ No |
| OTHER | | | , | ☐ Yes ☐ No |

The appointment of counsel is subject to reimbursement and dependent on the submission of a financial affidavit.

Case No JD **36034**

C.   <u>SERVICE OF PROCESS</u>

| | | Accepts | Waives | Not Complete |
|---|---|---|---|---|
| **MOTHER** | Christine Marie Webster | ☒ | ☒ | ☐ |
| **FATHER** | ▓▓▓▓▓▓▓▓▓▓▓ | ☒ | ☒ | ☐ |
| **FATHER** | | ☐ | ☐ | ☐ |
| **FATHER** | | ☐ | ☐ | ☐ |
| **OTHER** | | ☐ | ☐ | ☐ |
| **OTHER** | | ☐ | ☐ | ☐ |

D.   <u>PATERNITY</u>

| Father's Name: ▓▓▓▓▓▓▓ | Relevant Child(ren) Brooke Angelina Scianna |
|---|---|

| Paternity has been Established<br><br>☒ Yes   ☐ No | Is willing to sign an Affidavit of Paternity<br><br>☐ Yes   ☐ No | Is Ordered to Submit to Testing<br><br>☐ Yes   ☐ No |
|---|---|---|

| Father's Name: | Relevant Child(ren) |
|---|---|

| Paternity has been Established<br><br>☐ Yes   ☐ No | Is willing to sign an Affidavit of Paternity<br><br>☐ Yes   ☐ No | Is Ordered to Submit to Testing<br><br>☐ Yes   ☐ No |
|---|---|---|

| Father's Name: | Relevant Child(ren) |
|---|---|

| Paternity has been Established<br><br>☐ Yes   ☐ No | Is willing to sign an Affidavit of Paternity<br><br>☐ Yes   ☐ No | Is Ordered to Submit to Testing<br><br>☐ Yes   ☐ No |
|---|---|---|

E.   <u>CONTESTED ISSUES</u>

| ☒ Yes   ☐ No | | Temporary Custody | Parenting Time | Services | Other |
|---|---|---|---|---|---|
| Mother | Christine Marie Webster | Yes | Yes | Yes | Yes |
| Father | ▓▓▓▓▓▓▓▓▓▓▓ | No | Yes | Yes | Yes |
| Father | | | | | |
| Father | | | | | |
| Other | | | | | |
| Other | | | | | |

Contested Issue(s) is / are as follows:

Mother requests a temporary custody hearing.

Father contests supervised visitation. Mother and Father contest services.

Mother and Father request full disclosure from DCS.

Mother and Father contest the dependency and request a pre-trial conference.

AZDCS004118

Case No JD **36034**

F. <u>TEMPORARY CUSTODY FINDINGS</u>

☒ The Court has received and reviewed the following documents:
☒ Dependency Petition  ☒ DCS Report dated <u>6/28/18</u> including attachments
☐ Other

☐ The Court determines that DCS has identified a proposed case plan for services pursuant to ARS §8-824

Continued Temporary Custody (*choose only one*)
☒ **Is clearly necessary** to prevent abuse or neglect pursuant to ARS §8-825.
☐ **Is NOT clearly necessary** to prevent abuse or neglect and the child(ren) should be returned to
_____

☐ Other: _____

☑ **THE COURT FINDS THAT** the Department of Child Safety has made reasonable efforts to prevent removal of the child(ren) from the home or that it was reasonable to make no efforts to maintain the child(ren) in the home.

☑ **THE COURT FINDS THAT** it is contrary to the welfare of the child(ren) to be returned to or placed in the custody of the parent/guardian for the following reasons:
<u>allegations in the verified petition filed 6/27/18 and court report dated 6/28/18</u>

☐ The Court finds DCS has made active efforts in accordance with ICWA standards.

☐ The Court has heard qualified expert testimony and finds by clear and convincing evidence that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts were unsuccessful; and that continued custody of the child(ren) by the parents, guardian or Indian Custodian is likely to result in serious emotional or physical damage to the child(ren) (23 USC §1912).

☐ Pursuant to ARS §8-829(A)(2), the Court finds that DCS has made attempts to identify and assess placement with the child(ren)'s grandparent or another member of the child(ren)'s extended family including a person who has a significant relationship with the child(ren).

☐ Pursuant to ARS §8-824(G), the Court finds that DCS has made reasonable efforts to place a child with siblings and if that is not possible, to maintain frequent visitation or other ongoing contact between all siblings.

G. <u>PHYSICAL CUSTODY</u>
☐ IT IS ORDERED that the child(ren) remain(s) a ward of the court in the legal care, custody and control of the Department of Child Safety. It is further ordered that the child(ren) is/are placed:
☐ as set forth in the Petition and Temporary Custody Order  ☐ as set forth below:

| Brooke Angelina Scianna | Care and Dinity, Group home |
|---|---|
| | |
| | |
| | |
| | |

☐ IT IS FURTHER ORDERED that the child(ren) shall remain in the physical custody of the person(s) or entity named above until otherwise ordered by the Court; and that DCS shall not move the child(ren) to a different placement without prior court approval except in the case of emergency, in which event DCS shall inform the Court and seek Court approval within 10 days after moving the child(ren).

AZDCS004119

Case No JD 36034

** Pursuant to ARS §8-514.05(C), the placement is authorized to consent to routine medical treatments, dental procedures, social and educational activities, and psychological / psychiatric evaluations and therapy for the child(ren).

**Pursuant to ARS §8-513(A)(2), Department of Child Safety is authorized to consent to travel within the U.S. for a period not to exceed 30 days.

**H.** <u>PARENTING TIME</u>

☑ IT IS ORDERED that parenting time shall be at the discretion of DCS

☑ IT IS ORDERED that parenting time shall be as follows:
Mother requests a temporary custody hearing.
Father: Parenting time at a minimum of two hours twice per week. Parenting time is currently supervised.

☐ IT IS ORDERED that
Neither allow or facilitate any contact of any kind, including but not limited to personal contact, contact by telephone, or contact by letter or message between_____
and the child(ren), pending order of this court.

☐ IT IS FURTHER ORDERED that parents shall attend all of the child(ren)'(s) medical appointments.

**I.** <u>SERVICES TO BE PROVIDED</u>

MOTHER _Christine Marie Webster_                        ☐ C2C

| | Services Requested / Offered | Agreed Upon | |
|---|---|---|---|
| ☒ | Parent Aide Services | ☐ Yes | ☒ No |
| ☐ | Parenting Classes through the community | ☐ Yes | ☐ No |
| ☐ | Psychological Evaluation and Reasonable Recommendations of Evaluation/Assessment | ☐ Yes | ☐ No |
| ☐ | Psychiatric Evaluation and Reasonable Recommendations of Evaluation/Assessment | ☐ Yes | ☐ No |
| ☐ | Counseling: | ☐ Yes | ☐ No |
| ☐ | Substance Abuse Assessment/Treatment | ☐ Yes | ☐ No |
| ☐ | Substance Abuse Testing | ☐ Yes | ☐ No |
| ☒ | Transportation as needed and as requested | ☒ Yes | ☐ No |
| ☐ | RBHA Referral (Regional Behavioral Health Authority) | ☐ Yes | ☐ No |
| ☐ | Interstate Compact on Placement of Child(ren) referral | ☐ Yes | ☐ No |
| ☐ | Referral for Domestic Violence Services | ☐ Yes | ☐ No |
| ☒ | Other: Autism education classes | ☐ Yes | ☒ No |
| ☐ | Other: | ☐ Yes | ☐ No |

| | C2C | | |
|---|---|---|---|
| ☐ | Referral for Dependency Treatment Court | ☐ Yes | ☐ No |
| ☐ | Referral for C2C Clinical Intake | ☐ Yes | ☐ No |

AZDCS004120

Case No JD **36034**

| FATHER | | ☐ C2C |
|---|---|---|
| Services Requested / Offered | | Agreed Upon |
| ☐ Paternity Testing | | ☐ Yes ☐ No |
| ☒ Parent Aide Services | | ☐ Yes ☒ No |
| ☐ Parenting Classes through the community | | ☐ Yes ☐ No |
| ☐ Psychological Evaluation and Reasonable Recommendations of Evaluation/Assessment | | ☐ Yes ☐ No |
| ☐ Psychiatric Evaluation and Reasonable Recommendations of Evaluation/Assessment | | ☐ Yes ☐ No |
| ☐ Counseling: | | ☐ Yes ☐ No |
| ☐ Substance Abuse Assessment/Treatment | | ☐ Yes ☐ No |
| ☐ Substance Abuse Testing | | ☐ Yes ☐ No |
| ☒ Transportation as needed and as requested | | ☒ Yes ☐ No |
| ☐ RBHA Referral (Regional Behavioral Health Authority) | | ☐ Yes ☐ No |
| ☐ Interstate Compact on Placement of Child(ren) referral | | ☐ Yes ☐ No |
| ☐ Referral for Domestic Violence Services | | ☐ Yes ☐ No |
| ☒ Other: Autism education classes | | ☐ Yes ☒ No |
| ☐ Other: | | ☐ Yes ☐ No |

| C2C | | |
|---|---|---|
| ☐ Referral for Dependency Treatment Court | | ☐ Yes ☐ No |
| ☐ Referral for C2C Clinical Intake | | ☐ Yes ☐ No |

| CHILD(REN)   *Brooke Angelina Scianna* | | ☒ C2C |
|---|---|---|
| Services Requested / Offered | | Agreed Upon |
| ☐ Rapid Response with reasonable recommendations | | ☐ Yes ☐ No |
| ☐ Birth to 5 Assessment | | ☐ Yes ☐ No |
| ☒ RBHA Referral (Regional Behavioral Health Authority) *AZCA* | | ☒ Yes ☐ No |
| ☐ Comprehensive Medical and Dental Plan | | ☐ Yes ☐ No |
| ☐ Referral to Arizona Early Intervention Program | | ☐ Yes ☐ No |
| ☒ Clothing Allowance and Standard Allowances | | ☒ Yes ☐ No |
| ☐ Child Care | | ☐ Yes ☐ No |
| ☐ Independent Living | | ☐ Yes ☐ No |
| ☒ Other: DDD services, High Needs CM, Behavioral coach team. | | ☒ Yes ☐ No |

**J.   SERVICES ORDERED**

☐ The court orders the parties to participate in the services agreed upon in section I above.

☐ The Court orders the following (additional) services:

AZDCS004121

Case No JD **36034**

**K.** <u>**DEPENDENCY ADJUDICATION & DISPOSITION FINDINGS**</u>

*PLEA:*

☒ The dependency is contested by  Christine Marie Webster, ▓▓▓▓▓▓
and the parties request that a ☐ mediation   ☒ pre-trial conference   be set.

☐ _____ Stipulates to the dependency based upon:

☐ _____ Denies the allegations and submits the issues of
dependency to the Court based upon: _____

☐ _____ is / are not contesting the dependency.

*ADJUDICATION FINDINGS:*

☐ The Court confirms that  Christine Marie Webster, ▓▓▓▓▓▓  has met with
Counsel and has been advised regarding trial rights pursuant to ARS §8-843(A).

Mother  Christine Marie Webster _____ has entered
an ☐ admission ☐ denial and submission ☐ no contest plea.

The Father ▓▓▓▓▓▓ _____ has entered
an ☐ admission ☐ denial and submission ☐ no contest plea.

The Father _____ has entered
an ☐ admission ☐ denial and submission ☐ no contest plea.

The Father _____ has entered
an ☐ admission ☐ denial and submission ☐ no contest plea.

_____ has entered
an ☐ admission ☐ denial and submission ☐ no contest plea.

☐ The Court determines that the plea of the parent(s) was / were made knowingly, intelligently and
voluntarily.

☐ The Court having considered the verified ☒ petition, ☐ amended petition, ☒ DCS reports
dated  6/28/18, ☐ _____ and all information presented and finds by a
preponderance of the evidence that:

  ☒ The Court has exclusive jurisdiction over the subject matter pursuant to ARS §8-802 and
  venue is appropriate in Maricopa County pursuant to ARS §8-206.

  ☒ The Petitioner is authorized to initiate this dependency proceeding pursuant to Title 8 ARS
  §8-201 et seq, ARS §8-501 et seq, and ARS §8-802 et seq

  ☐ The child(ren) ☐ is / are ☐ is not / are not   dependency as defined in ARS §8-201 as to
    ☐ Mother,  Christine Marie Webster
    ☐ Father, ▓▓▓▓▓▓
    ☐ Father,
    ☐ Father,
    ☐ Other,

AZDCS004122

Case No JD **36034**

***DISPOSITION:***

☐ This order serves as a proposed disposition. The **CASE PLAN is** _____
Services to be provided include those listed in sections I and J and _____

☐ The Court orders the following child(ren) _____
be made ward(s) of the Court as a dependent child(ren) as to ☐ Mother
☐ Father, _____ and placed in accordance with this Order.

☐ The Court finds after consideration of the health and safety of the child(ren), the goal of placement and the services offered to the family and the child(ren), that the goal of the case plan is appropriate at this time.

☐ If the child(ren) is / are an Indian child(ren), the Court finds the child(ren) was placed pursuant to the standards of ICWA, 25 USC §1915.

**L.**   **DISCLOSURE PURSUANT TO R.P.J.C 44(A),(B)(1)**

☒ The parties agree to conduct mutual disclosure pursuant to Rules of Procedure for the Juvenile Court.

☐ The parties agree to conduct mutual disclosure as follows: _____

**M.**   **ADDITIONAL COURT ORDERS**

☐ **DCS** agrees to substitute in as petitioner.

☐ **DCS** agrees to act as co-petitioner.

☐ **FORM 1 – Notice to Parent in Dependency Action** was read to _____
in open Court on this date. She / He indicates that she / he understands her / his rights and a copy of the Form 1 was provided through her / his counsel.

☒ **IT IS ORDERED** filing the original verification.. _____
☐ **IT IS ORDERED** _____
☐ **IT IS ORDERED** _____

AZDCS004123

Case No JD **36034**

**N.    FUTURE HEARINGS**

| Type of Hearing | Date | Time | Before Judge / Commissioner |
|---|---|---|---|
| Initial | | | Commissioner Hoskins |
| Publication | | | |
| Temporary Custody | 7/12/18 | ~~#21~~ 2:00 | Hoskins |
| Adjudication | 9/14/18 | 1:30 | Hoskins |
| Disposition | | | |
| Mediation | | | |
| Pre-Trial Conference | 8/16/18 | 10:00 | Commissioner Hoskins |
| Final Pre-Trial Conference | | | |
| Permanency Planning 0-2 | | | |
| Permanency Planning 3-17 | 5/22/19 | 9:30 AM | Commissioner Hoskins |
| Report & Review | | | |
| IHI Report & Review | | | |
| IHI Final Review | | | |

**O.    HEARINGS TO BE VACATED**

| Type of Hearing | Date | Time | Before Judge / Commissioner |
|---|---|---|---|
| Initial | 7/2/18 | 10:15 AM | Commissioner Hoskins |
| | | | |
| | | | |
| | | | |

Date   July 2, 2018

Commissioner Hoskins
of the Superior Court

*WARNING: YOUR FAILURE TO APPEAR AT THESE HEARINGS AND TO ACTIVELY PARTICIPATE IN THESE COURT PROCEEDINGS AND IN THE CASE PLAN MAY RESULT IN THE CHILD(REN) BEING ADJUDICATED DEPENDENT WITH CONTINUED COMMITMENT TO THE CARE, CUSTODY AND CONTROL OF THE DEPARTMENT OF CHILD SAFETY AND COULD RESULT IN FURTHER PROCEEDINGS FOR PERMANENT GUARDIANSHIP PURSUANT TO A.R.S §8-871 ET SEQ OR TERMINATION OF YOUR PARENTAL RIGHTS PURSUANT TO §8/533 ET SEQ.*

AZDCS004124

Exhibit 6

Chris DeRose, Clerk of Court
*** Electronically Filed ***
7/13/2018 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                          7/2/2018

JUDGE PRO TEM NICOLAS B. HOSKINS          CLERK OF THE COURT
                                              A. Villasenor
                                                 Deputy

IN THE MATTER OF:

BROOKE ANGELINA SCIANNA              THOMAS F STUBBS
  F1138995
  DOB: 7/14/2001

                                     MONICA  MALHOTRA

                                     DEEAN  GILLESPIE STRUB

                                     CHRISTINE MARIE WEBSTER
                                     15928 W CUSTER LANE
                                     SURPRISE AZ 85379

                                     SARA J. SMITH

                                     JOHN RALPH SCIANNA
                                     10407 W BOLIVAR
                                     SUN CITY AZ 85351


                                     FOSTER CARE REVIEW BOARD
                                     JUVENILE OFFICE OF PUBLIC
                                     DEFENSE SERVICES
                                     DCS SPECIALIST - SOUTHWEST
                                     REGION
                                     LEGAL ADVOCATE-JUVENILE


PRELIMINARY PROTECTIVE HEARING
DEPENDENCY CONTESTED


10:26 a.m.  This matter is digitally recorded in Courtroom 11.

Docket Code PPHDENYALL              Form JDPPHAll                    Page 1


AZDCS004126

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                    7/2/2018

This is the time set for Preliminary Protective Hearing on a Dependency Petition filed 6/27/2018.

Present:  Assistant Attorney General Monica Malhotra, counsel for the Department; DCS Child Safety Specialist Tina Canale; Deputy Legal Advocate Thomas Stubbs, guardian ad litem for the child; Sarah Michael, appearing for Sara Smith, counsel for the father; John Scianna, the father; David Goldfarb, appearing for Deean Gillespie, counsel for the mother; and Christine Webster, the mother.

The Court is advised of the results of the Preliminary Protective Conference.

After review of the financial affidavit,

THE COURT FINDS that father is indigent.

IT IS ORDERED appointing Office of Public Defense Services (Sara Smith) as counsel to represent the father in all further proceedings in this matter.

IT IS ORDERED affirming the appointment of the Office of the Legal Advocate (Thomas Stubbs) as guardian ad litem for the child in all further proceedings in this matter.

The Court has reviewed the original verification and the DCS Court Report dated 6/28/2018.

The Indian Child Welfare Act (ICWA) does not apply in this matter.

Service is accepted and defects are waived by mother and father.

THE COURT FINDS that service is complete as to mother and father.

Paternity has been established in this matter.

Form I, Notice to Parent in Dependency Action, is read and provided to both parents. Both parents indicate an understanding of the same.

Discussion is held.

Docket Code PPHDENYALL                    Form JDPPHAll                              Page 2

AZDCS004127

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                7/2/2018


     LET THE RECORD REFLECT that both mother and father are refusing to participate in the services being offered by the Department.

     The mother and father wish to contest the allegations of the petition.

     IT IS ORDERED entering a denial to the petition on behalf of the mother and father.

     The father may have visits with the child in the group home however the group home does not support mother having visits with the child at their facility.

     The Department does not object to the mother having supervised visits with the child by a case aide or specialized parent aide.

     IT IS ORDERED permitting the mother to have visits with the child through approved safety monitors.

     10:42 a.m.  Alisa, hospital stabilization representative through CFSS announces for the record and indicates that she is able to supervise visits for mother and child in the community or the group home.

     Discussion is held.

     The Department does not object to the group home supervising mother's visits and does not believe a support partner is necessary.

     Discussion continues.

     Over the Department's objection,

     IT IS ORDERED permitting mother to have supervised visits with the child by the hospital stabilization representative through CFSS throughout the community or in the group home, if allowed.

     The parties are provided with the CFSS recommendations.

     IT IS ORDERED admonishing the parties not to discuss this dependency matter in a public forum.

AZDCS004128

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                    7/2/2018

IT IS ORDERED continuing the child as a temporary ward of the Court, committed to
the care, custody and control of the Department of Child Safety.

THE COURT FINDS that the Department of Child Safety has made reasonable efforts to
prevent the removal of the child from the home and that continuation in the home would be
contrary to the welfare of the child, or that it was reasonable to make no efforts to maintain the
child in the home.

IT IS ORDERED vacating the Initial Dependency Hearing

    on      7/2/2018
    at      10:15 AM
    before  Honorable Nicolas Hoskins

IT IS ORDERED setting this matter for Dependency - Temp Custody 5 Day Hrg as to
mother only

    on      7/12/2018
    at      2:00 PM
    before  Honorable Nicolas Hoskins
    at the Maricopa County Juvenile Court Center
    Durango Facility, 3131 W. Durango St., Phoenix, AZ 85009

IT IS ORDERED setting this matter for Conference - Pretrial - Contested Dependency

    on      8/16/2018
    at      10:00 AM
    before  Honorable Nicolas Hoskins
    at the Maricopa County Juvenile Court Center
    Durango Facility, 3131 W. Durango St., Phoenix, AZ 85009

IT IS ORDERED setting this matter for Dependency - Adjudication

    on      9/14/2018
    at      1:30 PM – 5:00 PM
    before  Honorable Nicolas Hoskins
    at the Maricopa County Juvenile Court Center
    Durango Facility, 3131 W. Durango St., Phoenix, AZ 85009

Docket Code PPHDENYALL            Form JDPPHAll                    Page 4

AZDCS004129

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                          7/2/2018

This Courtroom utilizes an electronic recording system for the Court's record. If a court reporter is needed, a written request must be filed with the Clerk of the Court and a copy provided to the assigned judicial officer at least 72 hours before the commencement of the proceeding.

To order a copy of the audio record on compact disc (CD), please call Juvenile Court Administration (Durango facility - 602-506-4533/Southeast facility - 602-506-2544). There will be a fee of $30 for each copy of the Superior Court proceedings. All copies will be provided using Court-supplied media.

IT IS ORDERED settling and approving the Preliminary Protective Order and Order Setting Court Hearings signed by the Court this date.

IT IS ORDERED that services, placement of the child and visitation shall occur as indicated in the Preliminary Protective Order signed by the Court this date.

10:56 a.m. Court adjourns.

Filed:
    Preliminary Protective Order and Order Setting Court Hearings
    Verification
    Parents' Financial Affidavit to Determine Eligibility for a Court-Appointed Attorney
    Form I, Notice to Parent in Dependency Action

NOTICE

If a party fails to appear for the Pretrial Conference, the failure to appear may be deemed as an admission to all the facts in the petition and the Court may proceed to an adjudication of the ultimate issues.

If the petitioner fails to appear, the failure to appear may be deemed as a failure to prosecute and this matter may be dismissed.

If a party or a party's attorney fails to obey a pretrial order, or fails to appear at a Pretrial Conference, or is substantially unprepared to participate in the Conference or if a party or party's attorney fails to participate in good faith, the Court, upon motion or on its own initiative, may make such orders with regard to such conduct as are just, including among others, any of the orders provided in Rule 44 of the Rules of Procedure for the Juvenile Court.

Docket Code PPHDENYALL                Form JDPPHAll                        Page 5

AZDCS004130

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                             7/2/2018

WARNING

As a parent, it is your responsibility to cooperate with all services offered, and work
toward return of your child.  A failure to do so, within a reasonable period of time, may mean
losing your child forever through termination of your rights and adoption.

AZDCS004131

Exhibit 7

Chris DeRose, Clerk of Court
*** Electronically Filed ***
8/24/2018 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                     8/16/2018

                                              CLERK OF THE COURT
JUDGE PRO TEM NICOLAS B. HOSKINS               A. Villasenor
                                               Deputy

IN THE MATTER OF:

BROOKE ANGELINA SCIANNA              THOMAS F STUBBS
F1138995
DOB: 7/14/2001                       BROOKE ANGELINA SCIANNA
                                     C/O DCS CASEWORKER


                                     MONICA  MALHOTRA

                                     DEEAN  GILLESPIE STRUB

                                     SARA J. SMITH


                                     FOSTER CARE REVIEW BOARD
                                     DCS SPECIALIST - SOUTHWEST
                                     REGION


            PRETRIAL CONFERENCE HEARING
        CONTESTED DEPENDENCY HEARING CONTINUED


    10:16 a.m.  This matter is digitally recorded in Courtroom 11.

    This is the time set for Pretrial Conference regarding a petition filed 6/27/2018.

    Present:  Assistant Attorney General Jennifer Markley, appearing for Monica Malhotra,
counsel for the Department; DCS Child Safety Specialist Melissa Courtright; Deputy Legal
Advocate Thomas Stubbs, guardian ad litem for the child; Sara Smith, counsel for the father;
██████████; and Deean Gillespie Strub, counsel for the mother.

    Discussion is held.

AZDCS004288

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                          8/16/2018


Upon the oral motion by mother's counsel, and there being no objection,

IT IS ORDERED granting mother's counsel for a continuance and vacating the
Dependency – Adjudication

     on    10/16/2018
     at    1:30 PM
     before  Honorable Nicolas Hoskins

10:17 a.m.  Christine Webster, the mother, appears telephonically and announces for the
record.

IT IS ORDERED affirming the Dependency - Temp Custody 5 Day Hrg

     on    8/21/2018
     at    2:00 PM
     before  Honorable Nicolas Hoskins
     at the Maricopa County Juvenile Court Center
     Durango Facility, 3131 W. Durango St., Phoenix, AZ 85009

IT IS ORDERED resetting the Dependency - Adjudication

     on    11/15/2018
     at    1:30 PM – 5:00 PM
     before  Honorable Nicolas Hoskins
     at the Maricopa County Juvenile Court Center
     Durango Facility, 3131 W. Durango St., Phoenix, AZ 85009

IT IS ORDERED resetting the Dependency - Adjudication

     on    11/20/2018
     at    1:30 PM – 5:00 PM
     before  Honorable Nicolas Hoskins
     at the Maricopa County Juvenile Court Center
     Durango Facility, 3131 W. Durango St., Phoenix, AZ 85009

IT IS ORDERED granting the Department leave to amend the dependency petition.

AZDCS004289

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                          8/16/2018

Discussion is held.

IT IS ORDERED directing the Department to email the mother a schedule of the child's appointments in advance and copy mother's counsel on the email.

The guardian ad litem for the child will work on the issues brought forward during the Mediation Hearing.

Discussion is held.

IT IS ORDERED directing the Department to disclose the incident reports of the child while in the group home.

This Courtroom utilizes an electronic recording system for the Court's record. If a court reporter is needed, a written request must be filed with the Clerk of the Court and a copy provided to the assigned judicial officer at least 72 hours before the commencement of the proceeding.

To order a copy of the audio record on compact disc (CD), please call Juvenile Court Administration (Durango facility - 602-506-4533/Southeast facility - 602-506-2544). There will be a fee of $30 for each copy of the Superior Court proceedings. All copies will be provided using Court-supplied media.

IT IS ORDERED continuing the child as a temporary ward of the Court, committed to the care, custody and control of the Department of Child Safety.

10:30 a.m. Court adjourns.

WARNING

As a parent, it is your responsibility to cooperate with all services offered, and work toward return of your child. A failure to do so, within a reasonable period of time, may mean losing your child forever through termination of your rights and adoption.

AZDCS004290

Exhibit 8

Chris DeRose, Clerk of Court
\*\*\* Filed \*\*\*
8:00 AM

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

SEP 0 5 2018

JD36034

8/21/2018

JUDGE PRO TEM NICOLAS B. HOSKINS

CLERK OF THE COURT
A. Villasenor
Deputy

IN THE MATTER OF:

BROOKE ANGELINA SCIANNA
F1138995
DOB: 7/14/2001

THOMAS F STUBBS

MONICA MALHOTRA

DEEAN GILLESPIE STRUB

SARA J. SMITH

FOSTER CARE REVIEW BOARD
DCS SPECIALIST - SOUTHWEST
REGION

### REVIEW OF TEMPORARY CUSTODY HEARING

Prior to the hearing commencing, Mother's Exhibits 1-21 and Department's Exhibits 22-25 are marked for identification.

2:02 p.m. This matter is digitally recorded in Courtroom 11.

This is the time set for Review of Temporary Custody regarding Brooke Scianna.

Present: Assistant Attorney General Monica Malhotra, counsel for the Department; DCS Child Safety Specialist Melissa Courtright; Deputy Legal Advocate Thomas Stubbs, guardian ad litem for the child; Deean Gillespie Strub, counsel for the mother; and Christine Webster, the mother.

The Rule of Exclusion of Witnesses remains in effect.

Docket Code REVTEMPCUST          Form JDRevTempCust                    Page 1

AZDCS004291

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                          8/21/2018

2:04 p.m.  Marie Quigley and Casandra Tisdale are excused and exit the courtroom.

Mother's Exhibit 7 and the Department's Exhibits 22, 23, and 24 were previously admitted at the hearing on 7/12/2018.

MOTHER'S CASE:

Dr. James Adams is sworn and testifies.

Mother's counsel moves to admit Exhibit 25.

There being no objection,

Mother's Exhibit 25 is admitted into evidence.

2:24 p.m.  Dr. Adams is excused and exits the courtroom.

2:25 p.m.  Casandra Tisdale enters the courtroom and is sworn and testifies.

The witness is excused and exits the courtroom.

3:02 p.m.  Court adjourns.

3:08 p.m.  Court reconvenes. This matter is digitally recorded.

The parties previously present remain present.

3:08 p.m.  Daniel Quigley enters the courtroom, and is sworn and testifies.

The witness is excused.

3:16 p.m.  Marie Quigley enters the courtroom, and is sworn and testifies.

The witness is excused.

3:23 p.m.  Ashley Montoya appears telephonic, and is sworn and testifies.

3:31 p.m.  Ms. Montoya is excused and no longer appears telephonically.

AZDCS004292

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                    8/21/2018


3:31 p.m.  Court adjourns.

3:35 p.m.  Court reconvenes.  This matter is digitally recorded.

All parties previously present remain present.

Christine Webster is sworn and testifies.

Mother moves to admit Exhibits 13, 5, 6, 13, 12, 20, 21, 2, 14, and 15.

There being no objection,

Mother's Exhibits 13, 5, 6, 13, 12, 20, 21, 2, 14, and 15 are admitted into evidence.

The mother is excused.

The parties rest.

The parties present closing arguments.

Based upon the evidence presented,

THE COURT FINDS that temporary custody of the child is clearly necessary to prevent abuse pending the hearing on the dependency petition.

IT IS ORDERED continuing the child as a temporary ward of the Court, committed to the care, custody and control of the Department of Child Safety.

IT IS ORDERED affirming all contrary to welfare findings.

The Court notes that there is a comprehensive medical team evaluating the child's needs.

IT IS ORDERED directing the Department to make arrangements to facilitate a comprehensive medical evaluation for the child with Dr. Richard Frye at Phoenix Children's Hospital and include mother's input.

IT IS ORDERED that the Department shall reach out to the child's providers and obtain a determination on the issue of the child visiting the mother on the weekends.

Docket Code REVTEMPCUST          Form JDRevTempCust                    Page 3

AZDCS004293

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                          8/21/2018

The Department will amend the dependency petition to include an allegations of neglect and based on the child's behaviors as to mother.

IT IS ORDERED affirming the Dependency - Adjudication regarding the mother and father

on      11/15/2018 and 11/20/2018
at      1:30 PM – 5:00 PM
before  Honorable Nicolas Hoskins
at the Maricopa County Juvenile Court Center
Durango Facility, 3131 W. Durango St., Phoenix, AZ 85009

This Courtroom utilizes an electronic recording system for the Court's record. If a court reporter is needed, a written request must be filed with the Clerk of the Court and a copy provided to the assigned judicial officer at least 72 hours before the commencement of the proceeding.

To order a copy of the audio record on compact disc (CD), please call Juvenile Court Administration (Durango facility - 602-506-4533/Southeast facility - 602-506-2544). There will be a fee of $30 for each copy of the Superior Court proceedings. All copies will be provided using Court-supplied media.

4:38 p.m. Court adjourns.

IT IS ORDERED, pursuant to Arizona Revised Statutes, that any and all schools, school districts and personnel thereof shall fully cooperate with juvenile probation officers, DCS child safety specialists, and attorneys or guardian ad litem or Court appointed special advocates representing a child in a dependency or delinquency action by allowing access by them to all educational records of the child, including but not limited to records pertaining to school, attendance, behavior, academic progress, and psychological evaluations, and shall discuss the contents and meaning thereof with them to assist them in the preparation, implementation, and completion of a rehabilitation and treatment plan for the child.

Docket Code REVTEMPCUST          Form JDRevTempCust                    Page 4

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD36034                                                    8/21/2018


WARNING

As a parent, it is your responsibility to cooperate with all services offered, and work toward return of your child.  A failure to do so, within a reasonable period of time, may mean losing your child forever through termination of your rights and adoption.


_____8/36/18_____          _____
DATE                                    JUDGE PRO TEM NICOLAS B. HOSKINS


Docket Code REVTEMPCUST          Form JDRevTempCust                    Page 5

AZDCS004295

Exhibit 9

Addendum Report To Juvenile Court

County

Dated:

Court Case Number:

I.  **PRESENT SITUATION:**

On 08/22/2018 Brooke Scianna was displaying uncontrollable behaviors within the group home. The group home staff reached out to CFSS who informed that they should contact the local police and emergency department in regards to Brooke's behaviors. Brooke was combative with the officers and EMT's and sustained some facial abrasions while being restrained. Brook was transported to Arrowhead Hospital for observation on 08/22/2018. Arrowhead Hospital admitted Brooke on 08/22/2018 and submitted a referral for Brooke to be placed at Aurora Behavioral Health, as the child's needs are too great for the group home and hospital staff to meet. While at Arrowhead Hospital Brooke continued to have uncontrollable behaviors as she was hitting, biting, and pulling the hair of the staff members. In addition to the these behaviors Brooke was throwing and eating her feces. Brooke was transported and admitted to Aurora Behavioral Health on 08/25/2018

II.  **RECOMMENDATIONS:**

A.  **AGENCY:**

It is respectfully recommended that Brooke Scianna remain a ward(s) of the court, committed to the care, custody and control of the Arizona Department of Child Safety.

B.  **FINANCIAL:**

It is respectfully recommended that beginning (date) <u>Brooke Scianna</u> , the parents listed below be assessed the following amounts on a monthly basis per child as the contribution towards the cost of foster care:

(parent name) <u>Christine Scianna</u> be assessed $ <u>50.0</u> monthly for each of the following children:  <u>Brooke Scianna</u>

(parent name) ▉▉▉▉▉ be assessed $ <u>50.00</u> monthly for each of the following children:  <u>Brooke Scianna</u>

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

C.  **REASONABLE EFFORTS FINDINGS:**

It is respectfully recommended that the Court find that the Agency has made reasonable efforts in this case.

Respectfully Submitted:

Name/Title:   Melissa Courtright DCSS
ARIZONA DEPARTMENT OF CHILD SAFETY
Telephone Number:   602-771-0206
Date:   8/29/18

Approved by:

Name/Title:   Nicholas Long DCSPS
ARIZONA DEPARTMENT OF CHILD SAFETY
Date:   8/29/18

Case Name: SCIANNA, CHRISTINE  ID: 511175

AZDCS004299

Exhibit 10

DD-191-FF (8-11)

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY**
Division of Developmental Disabilities

**INCIDENT REPORT**
*Confidential Information*

~~~ase Print~~

• Division staff may use this form to ensure all pertinent incident information is gathered.
• Providers may use this form or write all pertinent incident information on a separate report to the Division.

| INDIVIDUAL'S NAME (Last, First, M.I.) | FOCUS ID NO. | BIRTHDATE |
|---|---|---|
| Scianna, Brooke | | 7-14-2001 |

| INDIVIDUAL'S ADDRESS (No., Street, City, State, ZIP) | | FOSTER CARE |
|---|---|---|
| 10818 W. Pontiac Dr  P Glendale, AZ  85308 | | ☐ Yes  ☐ No |

PROVIDER NAME AT TIME OF INCIDENT (Qualified Vendor, Individual Independent Provider, Provider Site Name)
Care and Dignity

| NAME AND LOCATION OF INCIDENT (Site Name, No., Street, City State, ZIP) | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|
| Ann's House | 8-22-18 | 3:21 ☑PM ☐ AM |

| STAFF/WITNESS(ES) INVOLVED IN INCIDENT (Last, First, M.I.) | PHONE NUMBER | IMMEDIATE SUPERVISOR | |
|---|---|---|---|
| 1. Monreal, Maria | (602) 501-9669 | | ☐ N/A |
| 2. Johnson, Stephanie | (602) 601-9669 | IMMEDIATE SUPERVISOR  Shawnine | ☐ N/A |

DESCRIBE INCIDENT THOROUGHLY. (What happened before, during and after the incident. Include all known facts, causes of injury and emergency measures, if applicable. Write clearly, objectively and in order of occurrence, without reference to the writer's opinion.)

**WHAT HAPPENED BEFORE THE INCIDENT?**
B.S. went ~~into~~ into her bedroom and put on her shoes then came out and grabbed staffs hand and lead her into the garage.

**WHAT HAPPENED DURING THE INCIDENT?**
B.S. Came in from the ~~garag~~ garage into the living room after attempted to get into the group home ran but it was locked so she came back in and hit staff in the face, then was placed into the standing basket weave. B.S. picked up her shoes & ran down the Hallway the fire departmend Chase her down the Hallway B.S. Started hitting the fireman and trying to bite him. B.S. kept trying to fight the fireman. B.S. was taken to arrowhead hosppital

**WHAT COULD HAVE PREVENTED THE INCIDENT?**
Nothing

*Form is continued on reverse (page 2)*

See reverse for EOE/ADA/LEP/GINA disclosures

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER DATED DECEMBER 16, 2021

C&DServices - Scianna 0000525

DD-191-FF (8-11) - PAGE 2

| INDIVIDUAL'S NAME (Last, First, M.I.) | DATE OF INCIDENT |
|---|---|
| | |

TYPE OF MEDICAL INTERVENTION *(Doctor's visit, urgent care, emergency room, hospitalization)*

LOCATION OF MEDICAL INTERVENTION *(Site location and address)*

## NOTIFICATIONS

**Serious incidents,** as described in the Division's Policy and Procedures Manual Administrative Directive 76, are to be reported and written as soon as possible, but no later than 24 hours after the incident.

**All other incidents,** as described in the Directive, must be reported to the District office by the close of the next business day following the incident.

| PARENT/GUARDIAN NOTIFIED *(If Yes, name of person notified. If No, explain why)* | NOTIFIED BY WHOM (Last First, M.I.) | DATE/TIME OF NOTIFICATION |
|---|---|---|
| ☒ Yes ☐ No ☐ N/A | Shawnine Huff | 3:21   ☐ AM ☒ PM |
| SUPPORT COORDINATOR NOTIFIED | | |
| ☒ Yes ☐ No ☐ N/A | Shawnine Huff | 3:21   ☐ AM ☒ PM |
| CHILD/ADULT PROTECTIVE SERVICES NOTIFIED | | |
| ☐ Yes ☐ No ☐ N/A | | ☐ AM ☐ PM |
| TRIBAL SOCIAL SERVICES NOTIFIED | | |
| ☐ Yes ☐ No ☐ N/A | | ☐ AM ☐ PM |
| POLICE NOTIFIED | | |
| ☐ Yes ☐ No ☐ N/A | | ☐ AM ☐ PM |
| PRINT NAME OF PERSON COMPLETING THIS FORM | SIGNATURE OF PERSON COMPLETING FORM | DATE |

## CORRECTIVE ACTION/COMMENTS

WHAT STEPS ARE BEING TAKEN TO PREVENT THIS FROM HAPPENING AGAIN?

| PRINT SUPERVISOR'S NAME | SIGNATURE OF SUPERVISOR | DATE |
|---|---|---|
| | | |

Equal Opportunity Employer/Program • Under Titles VI and VII of the Civil Rights Act of 1964 (Title VI & VII), and the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title II of the Genetic Information Nondiscrimination Act (GINA) of 2008; the Department prohibits discrimination in admissions, programs, services, activities, or employment based on race, color, religion, sex, national origin, age, disability, genetics and retaliation. The Department must make a reasonable accommodation to allow a person with a disability to take part in a program, service or activity. For example, this means if necessary, the Department must provide sign language interpreters for people who are deaf, a wheelchair accessible location, or enlarged print materials. It also means that the Department will take any other reasonable action that allows you to take part in and understand a program or activity, including making reasonable changes to an activity. If you believe that you will not be able to understand or take part in a program or activity because of your disability, please let us know of your disability needs in advance if at all possible. To request this document in alternative format or for further information about this policy, contact the Division of Developmental Disabilities ADA Coordinator at 602-542-0419; TTY/TDD Services: 7-1-1. • Free language assistance for DES services is available upon request. • Ayuda gratuita con traducciones relacionadas con los servicios del DES está disponible a solicitud del cliente.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER DATED DECEMBER 16, 2021