Jeffrey S. Hunter, Esq.
Arizona Bar No. 024426
jhunter@wwhgd.com
docketing-PHX@wwhgd.com
WEINBERG, WHEELER, HUDGINS,
  GUNN & DIAL, LLC
1 North Central Avenue, Suite 900
Phoenix, Arizona 85004
Telephone: (602) 256-3015
Facsimile:  (602) 307-5853

*Counsel for Defendant Aurora Behavioral Healthcare-Tempe, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Scianna, an individual; Brooke Scianna, an individual, by and through her legal guardian, Christine Scianna,<br><br>                    Plaintiffs,<br><br> v.<br><br>State of Arizona, a government entity; Arizona Department of Child Safety, a governmental entity; Tina Canale, individually and as an employee with the State of Arizona Department of Child Safety; Christie Johnson aka Christi Mehl, individually and as an employee with the State of Arizona Department of Child Safety; Melissa Courtright, individually and as an employee with the State of Arizona Department of Child Safety, and Barry Courtright, her spouse; Nicholas Long, individually and as an employee with the State of Arizona Department of Child Safety; Gregory McKay, as former Director, Arizona Department of Child Safety; Michael Faust, as Director, Arizona Department of Child Safety; Aurora Behavioral Healthcare-Tempe, LLC, an Arizona Corporation, individually and as a services provider for the State of Arizona Department of Child Safety; Krzystztof | Case No.: 2:21-cv-01444-DJH<br><br>**DEFENDANT AURORA BEHAVIORAL HEALTHCARE TEMPE, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*Oral Argument Requested*<br><br>**(Dkt. #152)** |

Mlak, individually as an employee with Aurora Behavioral Healthcare-Tempe, LLC, and Jane Doe Mlak, his spouse; Kattia Luevano, individually as an employee with Aurora Behavioral Healthcare-Tempe, LLC, and John Doe Luevano, her spouse; Helen Nagle, individually as an employee with Aurora Behavioral Healthcare-Tempe, LLC, and John Doe Nagle, her spouse; Care and Dignity Services, LLC, an Arizona Corporation, individually and as a services provider for the State of Arizona Department of Child Safety John and Jane Does 2-6; and Black Entities 1-5,

Defendants.

Defendant Aurora Behavioral Healthcare-Tempe, LLC ("Aurora") hereby files this Reply in support of its Motion for Summary Judgment as to the only claims filed against Aurora, claims 21 and 23 of the First Amended Complaint, and request this Court issue an order granting summary judgment in favor of Aurora and against Plaintiffs.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    ARGUMENT**

    **A.    Despite Plaintiffs Making a New Informed Consent Claim for the First Time, Summary Judgment Is Appropriate Because Plaintiff Did Not Dispute That DCS Consented to the Administration of Haldol**

Plaintiffs, for the first time, allege that Aurora failed to obtain "informed consent" for the administration of Haldol to Brooke Scianna. (Dkt. No. 160, Plfs.' Resp. at 7-9). Arizona courts generally recognize two theories of liability for alleged unauthorized medical treatment, medical battery and medical negligence. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 309, ¶ 11 (2003). Claims based on lack of informed consent are medical negligence claims and relate to the duty of the physician to inform a patient of risks inherent in surgery or treatment to which the patient consented. *Id.* at 310, ¶ 11. Conversely, a medical battery occurs if a healthcare provider performs a medical procedure without the patient's consent. *Id.* at 309, ¶ 09. Because consent is a complete defense to a

medical battery claim, the central question is whether the patient has effectively given his or her consent to the procedure or treatment. *Id.* at 309, ¶ 9.

First, although Plaintiffs allege that Aurora failed to obtain informed consent before administering Haldol to Brooke, Plaintiffs have never made an informed consent claim against Aurora. Upon review of the First Amended Complaint, Plaintiff has never previously alleged that Aurora lacked informed consent or somehow failed to inform Brooke, Christine Scianna, or both of risks inherent in treatment to which they consented. *Duncan*, 205 Ariz. at 310, ¶ 11. Consequently, there is no evidence disclosed to support this claim including requisite expert testimony establishing a lack of informed consent. *Id.* at 310. Further, to the extent Plaintiffs are seeking to add an additional claim against Aurora for which it has not had adequate time to conduct discovery, Aurora requests the time to conduct discovery on such a claim pursuant to Rule 56(d), Fed. R. Civ. P. Regardless, simply making unsupported allegations that Aurora lacked "informed consent" where no such informed consent/medical negligence claim has been asserted against Aurora before the Response does not create a genuine issue of material fact to defeat summary judgment.

Additionally, while Plaintiffs claim that Aurora failed to obtain consent from DCS because Defendant Krzystztof Mlak, M.D. ("Dr. Mlak") "delegated the responsibility to obtain consent for new medications to its nurses", Plaintiffs cited nothing in support of their position that other qualified healthcare professionals cannot obtain consent for treatment. Plaintiffs similarly offered no support for their allegation that a "random employee of DCS" approved Brooke's medical treatment at Aurora. Notwithstanding their unsupported criticism of DCS, Plaintiffs did not dispute that DCS consented to the treatment.

Second, as to Plaintiffs' lack of consent and medical battery claim, Plaintiffs do not dispute that a representative of the Department of Child Safety ("DCS") consented to treatment at Auroa, including the administration of Haldol to Brooke. Plaintiff does not dispute that the Arizona Juvenile Court placed care, custody, and control of Brooke with DCS. (Dkt. No. 17, First Am. Compl. at ¶¶ 159, 152, 221). At the time, DCS was Brooke's

court-approved legal custodian with the authority to consent to Brooke's medical treatment at Aurora. (Dkt. No. 17, First Am. Compl. at ¶¶ 159, 152, 221). As avowed by Dr. Mlak, Aurora received actual, written consent from DCS to administer Haldol. (Ex. 7 to Def.'s Mot. for Summ. J, Dkt No. 152-7 at 105:20-106:3). Such actual consent defeats entirely Plaintiffs' medical battery claim, especially where Plaintiffs did not dispute (1) Aurora's legislative history arguments incorporated by reference herein, (2) the irrelevance of A.R.S. § 8-531, which may define custodian within the context of terminating a parent-child relationship, but does not govern a health care provider like Aurora's duty to obtain consent for mental health treatment, or (3) A.R.S. § 36-222(B), the exception to consent which provides Aurora with the authority to administer mental health treatment to prevent serious injury to a minor child. Because Plaintiffs have failed to oppose these arguments or offer facts demonstrating a genuine issue of material fact, Aurora is entitled to summary judgment.

**B.     Plaintiffs' Claims Fail Because Aurora Did Not Control Or Dictate Dr. Mlak's Decision-Making and Dr. Mlak Was an Independent Contractor.**

That a physician is on a hospital staff does not automatically render the physician a hospital's actual agent. *See Evans v. Bernhard*, 23 Ariz. App. 413, 417 (1975). Again, when determining whether a physician is a hospital's agent, the relevant inquiry is focused on the specific relational facts between the facility and physician. *Id.* Arizona courts have held that the key inquiry is the degree of control over the physician. *See Gregg v. Nat'l Med. Health Care Servs. Inc.*, 145 Ariz. 51, 55 (1985). Or, as Plaintiffs agree and quoted within their Response, "his right, independent of his employer, to control the manner and means of accomplishing the particular job." *DeMontiney v. Desert Manor Convalescent Ctr.*, 144 Ariz. 21, 26 (App. 1984). Here, the facts establish that Aurora never hired Dr. Mlak as an employee and the key inquiry of control over Dr. Mlak overwhelmingly establishes that Dr. Mlak was an independent contractor.

Whether an agency relationship exists can be a legal question when all *material facts* are undisputed, such as here. *See Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz.

589, 596, ¶ 21 (App. 2007). Plaintiffs rely heavily on their claims that Aurora's medical director "was instrumental in reversing Dr. Mlak's decision to administer Haldol to Brooke" and Dr. Mlak "independently oversaw many administrative aspects of the facility" to argue that Dr. Mlak was an independent contractor. (Dkt. No. 160, Plfs.' Resp. at 11). However, Plaintiffs provided no support that medical director input on patients under the care of an independent contractor physician is prohibited or that independent contractors cannot perform administrative functions.

Notably, Plaintiffs do not dispute that Aurora and Dr. Mlak entered into the written Agreement for Provision of Physician Services ("Agreement"), which unambiguously provided that Dr. Mlak was an independent contractor of Aurora. (Dkt. No. 152-4, Ex. 4 at AURORA(SCIANNA) 003107). The Agreement states, in relevant part:

> It is expressly acknowledged and understood by the parties that Physician is an 'independent contractor', and that nothing in this Agreement is intended to or shall be construed to, create an employee/employer relationship. . . provided always that the performance of services hereunder shall at all times be in accordance with the law and with the terms and conditions of this Agreement.

(Dkt. No. 152-4, Ex. 4 at AURORA(SCIANNA) 003107). Rather, Plaintiffs rely on *Santorii v. Martinez Russo* in which the Arizona Court of Appeals evaluated the relationship between real estate brokers and their salespersons. *Santorii*, 240 Ariz. 455, 457, ¶ 1 (App. 2016). Even if this Court is persuaded by the analysis in *Santorii*, its analysis weighs in favor of an independent contractor relationship between Aurora and Dr. Mlak and nothing more.

In *Santorii*, Sergio Horcos, a real estate salesperson, was returning from a real estate sales appointment when he was involved in an accident, killing the other driver and himself. *Id.* at 457, ¶ 2. The trial court granted Martinez Russo's summary judgment motion on the grounds that Horcos was not an employee and therefore, Martinez Russo could not be held liable for his alleged negligence. *Id.* at 457, ¶ 1. Santorii argued that although Horcos' contract specified that he was an independent contractor, the contract required

Horcos to work exclusively on behalf of Martinez Russo to procure listings, solicit purchasers and perform real estate related services, and required Horcos to purchase an automobile insurance policy naming Martine Russo as an additional insured. *Id.* at 460, ¶ 20. Relying on the very factors on which Plaintiffs rely, the Arizona Court of Appeals rejected this argument because "Martinez Russo had a degree of control over Horcos, but only as it related to real estate transactions". *Id.* at 461, ¶¶ 24-25. The *Santorii* court wrote:

> Despite working exclusively for Martinez Russo over a six-year period, Horcos was a licensed professional who had nearly complete discretion in the time, manner, and means in which he traveled to meet clients. The contract expressly characterized Horcos as an independent contractor who was "free to devote" his time, energy, effort, and skill as he saw fit. Horcos was not required to keep specific hours, attend sales meetings, or meet any sales quotas, and although Martinez Russo provided optional office space, administrative services, sales leads, and training, Horcos was charged a monthly fee for these services. There is no dispute that Horcos chose the territory where he worked, created his own advertisements, prospected for clients, drove his own car, worked from his home office, worked purely for commission, and set up his own appointments.

*Id.* at 461, ¶ 24.

Like in *Santorii*, the undisputed facts in this case establish that Aurora and Dr. Mlak entered into the Agreement establishing an independent contractor relationship. Although Aurora assigned Dr. Mlak patients, required him to maintain his own liability insurance and act in accordance with recognized standards, ethics, bylaws, rules, regulations, laws and Aurora policies, as applicable, Dr. Mlak expressly agreed to "use diligent efforts and professional skills and *independent professional judgment* in performing services under the Agreement. (Dkt. No. 152-4, Ex. 4 at AURORA(SCIANNA) 003103-04). Dr. Mlak further confirmed that Aurora did not exercise control over his provision of services to patients: he formulated his own independent judgment on how best to treat Brooke and Aurora <u>did not control</u> his decision-making as to how to treat Brooke, what medications to give, what medications not to give, etc. (Dkt. No. 152-7, Ex. 7 at 41:9-12, 228:6-16).

Moreover, Plaintiffs conveniently ignore all the undisputed facts weighing in favor of Dr. Mlak's status as an independent contractor. Dr. Mlak was also not compensated like

a salaried employee of Aurora. *C.f. Gregg v. Nat'l Medical Health Care Servs., Inc.*, 145 Ariz. 51, 55 (App. 1985). Rather, Aurora compensated him on a fee-for-service basis in which he submitted an invoice for his services at different rates dependent on the type of services he was performing (psychiatric evaluations, on call coverage, and seclusion and restraint). (Dkt. No. 152-4 at AURORA(SCIANNA) 003104-05; Dkt. No. 152-7 at 42:5-43:1). Given that Aurora did not exercise control over the manner in which Dr. Mlak's work was to be performed, he was an independent contractor and Plaintiffs' claims must fail to the extent they are predicated on Aurora's alleged vicarious liability for Dr. Mlak's alleged actions.

### C. Plaintiffs Have Failed to Raise a Genuine Issue of Material Fact to Defeat Summary Judgment Relating to Consent

Plaintiffs take the position that Dr. Mlak violated Christine Scianna and Brooke Scianna's right to familial association and right to direct a child's medical care, which Aurora denies.[1] For that position, Plaintiffs rely on *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000). However, Plaintiffs' characterization of the case is mistaken. Rather, the court discussed the constitutional issues inherent in removing children from their homes and subjecting them to medical examinations and treatment. In *Wallis*, the City of Escondido police removed two children from their home on the basis of a non-existent court order, placed them in a county-run institution, and took them to a hospital for the performance of highly intrusive body cavity examinations. *Id.* at 1130-31. The *Wallis* decision relied upon by Plaintiffs is about the two young children and their parents' constitutional claims against the city (based on the actions of its police department) and not about any battery claims or lack of consent claims concerning the examinations. *Id.* at 1141. Again, the *Wallis* court considered the specific issue of whether the city had violated the family's constitutional rights by subjecting the children to the examinations without the approval or presence of

---

[1] Aurora incorporates the arguments in Dr. Mlak's Motion for Summary Judgment and Reply in Support of Motion for Summary Judgment (Dkt. Nos. 151 & 162) herein by reference.

their parents. There was no discussion as to whether the doctor had obtained consent for the examinations or a battery or negligence claim, which is at issue herein. *Id.* at 1136-45.

Plaintiffs contend that the Ninth Circuit recognize the right of parents to notice and consent or obtain judicial authorization in advance of medical examinations of their children, unless a 'reasonable concern that material physical evidence might dissipate

Plaintiffs rely heavily Plaintiffs also rely on *Washington v. Harper*, 494 U.S. 210, 213-14 (1990), which discusses the administration of antipsychotic drugs to a mentally ill prisoner. Not only is the medical treatment of an inmate in another state's penitentiary irrelevant to the treatment of Brooke at issue in this case, but the Supreme Court acknowledged the intention behind the administration of such treatment "to alter the chemical balance in a patient's brain, leading to changes, *intended to be beneficial*, in his or her cognitive processes" and concluded that the inmate's interests were "adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Id.* at 229-31. In effect, the Supreme Court acknowledged that the policy under discussion was permissible under the Constitution because, like the statute on which Aurora relies, it was "an accommodation between an inmate's liberty interest in avoiding the forced administration of antipsychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others." *Id.* at 236.

Plaintiffs further rely on an out-of-state Alaska case, *Kiva O. v. Dep't of Health & Soc. Servs.*, 408 P.3d 1181 (Alaska 2018), based on Alaska. Stat. § 47.10.084, which falls under Title 47 for welfare, social services, and institutions. Again, as stated in its Motion for Summary Judgment, the application of such statutes and *Kiva O.* to healthcare providers like Aurora is misplaced. As an initial matter, the *Kiva O.* matter is directed against the Alaska Office of Child Services, not the healthcare provider. Further, the *Kiva O.* court considered whether the *Office of Child Services* could consent to certain medications over

a mother's objection; again, the matter did not concern the healthcare provider's actions or statutes applicable to the healthcare provider. *Kiva O.*, 408 P.3d at 1183.

The central question at issue here is whether Aurora had consent to administer Haldol to Brooke. Although Plaintiffs have previously relied upon A.R.S. § 8-531 and the cases discussed above to claim that only Brooke's parents could consent to the Haldol injections, the plain language of the statute, rules of statutory interpretation, and legislative history establish that Plaintiffs are mistaken and A.R.S. § 8-531 is not applicable to Aurora. As discussed at length in its Motion for Summary Judgment (Dkt. No. 152), A.R.S. § 8-531 outlines definitions which are for application within the limited context of Article 5 for the termination of the parent-child relationship, which is not at issue in Plaintiffs' battery and medical negligence claims against Aurora.

Instead, A.R.S. § 36-2272(A), organized under Title 36 for public health and safety, Chapter 22 for protection of minors, and Article 1 for "In General", states:

> Except as otherwise provided by law or a court order, no person, corporation, association, organization or state-supported institution, or any individual employed by any of these entities, may procure, solicit to perform, arrange for the performance of or perform mental health screening in a nonclinical setting or mental health treatment on a minor without first obtaining *the written or oral consent of* a parent or *a legal custodian of the minor child*. If the parental consent is given through telehealth, the health professional must verify the parent's identity at the site where the consent is given.

(emphasis added). Plaintiffs have not disputed the application of this statute to Aurora or disputed its meaning pursuant to the plain language of the statute. Plaintiffs have also not disputed the application of A.R.S. § 36-2272(B), which does away with the consent requirement when an emergency exists that requires a person to provide mental health treatment to prevent serious injury to or save the life of a minor child. Plaintiffs similarly have not disputed that DCS was Brooke's legal custodian and a DCS representative authorized Dr. Mlak to administer Haldol as part of her mental health treatment. Consent from Brooke's legal custodian was all that was required of Aurora and Dr. Mlak to

administer such treatment. *Duncan*, 205 Ariz. at 309, ¶ 9. Given that Plaintiffs' battery claim is defeated by consent, Aurora is entitled to summary judgment.

### D. There Are No Genuine Issues of Material Fact Regarding Causation or Damages to Preclude Summary Judgment in Aurora's Favor

As stated in the Motion for Summary Judgment, Plaintiffs must prove the existence of a duty, a breach of that duty, *the breach was the proximate cause of their injury*, and damages. A.R.S. § 12-563 (emphasis added); *Windhurst v. Ariz. Dep't of Corrections*, 256 Ariz. 186, 190, ¶ 1 (2023) ("A plaintiff who brings a medical malpractice action must prove that a medical institution or individual provider fell below the applicable standard of care"). "'[U]nless a causal relationship is readily apparent to the trier of fact,' expert medical testimony normally is required to establish proximate cause in a medical negligence case." *Salica v. Tucson Heart Hosp. – Carondelet, L.L.C.*, 224 Ariz. 414, 419, ¶ 16 (App. 2010). A party cannot leave causation to a jury's speculation. *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990).

Not only can Plaintiffs not prove medical negligence against Aurora because Dr. Mlak was an independent contractor, but they have also failed to prove a breach of the standard of care by Dr. Mlak. Plaintiffs' purported standard of care expert, Dr. Andrew Clark, opined that Dr. Mlak failed "to obtain an adequate history around Brooke's psychiatric treatment prior to prescribing her Haldol and failed to take account of Ms. Scianna's experience or concerns in that regard," but did not connect that alleged breach – which Aurora disputes – to any injury or damage to Plaintiffs. (Dkt. No. 152-8, Ex. 8 at PLTFS-003769; Dkt. No. 152-5, Ex. 5 at 60:18-61:1, 116:5-117:7). Instead, Dr. Clark admitted that it was not necessarily below the standard of care to prescribe Haldol to Brooke. (Dkt. No. 152-5, Ex. 5 at 60:18-61:1, 116:5-117:7).

Irrespective of whether Plaintiffs have established causation, which they have not, Plaintiffs have failed to prove damages to support their claims against Aurora. Brooke sustained no injury, harm, or damages as a result of Dr. Mlak's administration of Haldol, alleged failure to obtain an adequate history around Brooke's psychiatric treatment, or

both. In all negligence actions, including medical malpractice, plaintiffs must prove that the health care provider's failure to exercise a degree of care, skill, and learning expected of a reasonable, prudent health care provider in the profession or class to which they belong was the proximate cause of injury. *Windhurst*, 256 Ariz. at 192, ¶ 14. Although it is undisputed that Dr. Mlak administered Haldol to Brooke which caused her to experience a transient, reversible side effect called EPS, both Dr. Mlak and Plaintiffs' expert Dr. Clark agree that <u>the EPS did not cause any permanent injury or harm to Brooke to a reasonable degree of medical certainty</u>. (Dkt. No. 152-7, Ex. 7 at 230:5-7; Dkt. No. 152-5, Ex. 5 at 71:15-73:2). Dr. Mlak's expert, board-certified psychiatrist Jahanzeb Ali Khan, M.D. also determined that the administration of Haldol "did not cause Brooke any long-term harm". (Dkt. No. 152-10, Ex. 10 at p. 6). Plaintiffs dispute none of these facts and opinions, including those of their own expert. Although Plaintiffs attempt to rely on Christine Scianna's beliefs regarding the same, she is not a medical expert.

Therefore, Plaintiffs have failed to prove proximate cause or damages for their claims. Plaintiffs' claims must be dismissed because even their own expert agrees that the administration of Haldol and Cogentin did not result in any permanent harm or injury to Brooke.

## II.     CONCLUSION

For the reasons stated above, Defendant Aurora Behavioral Healthcare-Tempe, LLC respectfully requests that this Court issue an order granting summary judgment on claims 21 and 23 of the First Amended Complaint.

Respectfully submitted this 26th day of August, 2024.

> WEINBERG, WHEELER, HUDGINS,
>   GUNN & DIAL, LLC
>
> By */s/ Jeffrey S. Hunter*
>   Jeffrey S. Hunter, Esq.
> 1 North Central Avenue, Suite 900
> Phoenix, Arizona 85004
> *Counsel for Defendant Aurora Behavioral Healthcare-Tempe, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmitted a Notice of Electronic Filing to the following CM/ECF participants:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
docket@millsandwoods.com

-and-

DeeAn Gillespie Strub
Jenny DeAnn Jansch
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
mailroom@gillaw.com
*Attorneys for Plaintiffs*

Georgia A, Staton, Esq.
Ravi V. Patel, Esq.
JONES, SKELTON & HOCHULI P.L.C,
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
*Attorneys for Defendants State of Arizona,
Arizona Department of Child Safety,
Tina Canale, Christie Johnson (Christi Mehl),
Melissa Courtright, Barry Courtright
Nicholas Long, and Gregory McKay*

Cody M. Hall
BROENING OBERG WOODS & WILSON, P.C.
2800 N. Central Ave., 16th Fl.
Phoenix, Arizona 85004
cmh@bowwlaw.com
cjg@bowwlaw.com
*Attorneys for Defendant Care & Dignity Services, LLC*

Dustin A. Christner
Vincent J. Montell
Quintairos, Prieto, Wood & Boyer, P.A.
8800 East Raintree Drive, Suite 100, Scottsdale, Arizona 85260
*Attorneys for Defendant Krzystztof Mlak*

 By *s/ Connie Traslavina*